**STATE of Tennessee, Appellee,**

v.

**John Henry WOODEN, Appellant.**

Court of Criminal Appeals of Tennessee, Nashville.

July 8, 1983.

Permission to Appeal Denied by Supreme Court Oct. 11, 1983.

Henry A. Martin, Nashville, for appellant.

William M. Leech, Jr., State Atty. Gen. & Reporter, Kimberly J. Dean, Asst. State Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Mary Rubin, Asst. Dist. Atty. Gen., Nashville, for appellee.

OPINION

BYERS, Judge.

The defendant was convicted of second degree burglary, aggravated rape, aggravated assault and aggravated sexual battery.

He was sentenced to not less than six (6) nor more than fifteen (15) years, life, not less than three (3) years nor more than nine (9) years and thirty-five (35) years, respectively.

The defendant says he was denied a fair trial by the court's refusal to grant a recess from Friday afternoon until Monday morning to allow the testimony of a key witness, says the trial court erred by refusing to give requested instructions on identification testimony and alibi evidence, says the trial court erred in denying his motion for a severance, says the trial court's denial of his motion for a continuance forced him to trial with an inadequately prepared defense, says the trial court erred in denying his request for individual voir dire, says the state so damaged his presumption of innocence by informing the jury that he was in jail that the trial court should have granted his motion for a mistrial, says the misconduct of the state's attorney denied him a fair trial, says the identification of him was tainted and says evidence seized from his car at the time of his arrest should have been suppressed.

The judgments are affirmed.

The defendant does not challenge the sufficiency of the evidence. The record shows the evidence is sufficient for the jury to find the defendant guilty in each of the offenses for which he was convicted.

The defendant complains because the trial court would not recess the trial from Friday until the following Monday so that he could present Dr. Robert Buckhout, a psychiatrist, to testify generally as an expert witness on the unreliability of eyewitness identification.

■ Expert testimony is allowed when the particular matter is of such a nature that only those skilled or trained in a particular area will have knowledge about the matter. *State v. Howse,* 634 S.W.2d 652 (Tenn.Cr.App.1982). In *United States v. Thevis,* 665 F.2d 616 (5th Cir.1982), the defendant, like the defendant in this case, offered the testimony of Dr. Buckhout, as an expert, on eyewitness identification.

The Fifth Circuit Court of Appeals, in addressing this issue, said:

Buckhout did not comment specifically on the identification made by the two government witnesses, but instead testified generally as to problems with eyewitness identification and that pilots as a group were not better equipped than ordinary witnesses to make identifications. To admit such testimony in effect would permit the proponent's witness to comment on the weight and credibility of opponents' witnesses and open the door to a barrage of marginally relevant psychological evidence. Moreover, we conclude, as did the trial judge, that the problems of perception and memory can be adequately addressed in cross-examination and that the jury can adequately weigh these problems through common-sense evaluation. Our conclusion is supported by other circuits' uniform approval of excluding testimony exactly like Buckhout's. *United States v. Fosher,* 590 F.2d 381, 382–84 (1st Cir.1979) (Buckhout's specific testimony excluded); *United States v. Watson,* 587 F.2d 365, 368–69 (7th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979); *United States v. Brown,* 540 F.2d 1048, 1053–54 (10th Cir.1976), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977); *United States v. Brown,* 501 F.2d 146 (9th Cir.1974), *rev'd on other grounds sub nom. United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (Buckhout's specific testimony excluded); *United States v. Amaral,* 488 F.2d 1148, 1152–53 (9th Cir.1973); *United States v. Collins,* 395 F.Supp. 629 (M.D.Pa.), *aff'd,* 523 F.2d 1051 (3rd Cir.1975) (Buckhout's specific testimony excluded). *See also, United States v. Webb,* 625 F.2d 709, 710–11 (5th Cir.1980) (trial court did not err in excluding expert testimony that defendant lacked "propensity to commit a violent act"); *United States v. Sims,* 617 F.2d 1371, 1374–75 (9th Cir.1980) (trial court did not err in failing to appoint psychologist to assist defense through tes-

timony on the unreliability of eyewitness identification).

*Thevis,* 665 F.2d at 641, 642.

██ The proposed witness in this case would have only testified generally about eyewitness testimony. Whether an eyewitness's testimony is reliable is a matter which the jury can determine from hearing the witness's testimony on direct and cross-examination and which does not require expert testimony. The defendant is not entitled to any relief on this issue.

The defendant says the instructions given by the trial court on alibi evidence and on identification evidence were inadequate and that the trial court should have given the instructions which he requested on these subjects.

In instructing the jury on alibi evidence, the trial judge instructed the jury in accordance with the Tennessee Pattern Jury Instructions—Criminal 36–01. This instruction was approved by the Tennessee Supreme Court in *Christian v. State,* 555 S.W.2d 863 (Tenn.1977).

In instructing the jury on identification, the trial judge said:

The State must prove beyond a reasonable doubt the defendant's identity as the person who committed the crime. If, after considering all the evidence in this case, you, the jury, are not satisfied beyond a reasonable doubt that the defendant is this person, then you must find him not guilty.

The defendant made five special requests for instructions regarding the weight to be given identification testimony, including a request for the instruction in *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (1972). The *Telfaire* charge is not required in Tennessee. *Holt v. State,* 591 S.W.2d 785 (Tenn.Cr.App.1979).

██ The instructions given by the trial court on both identification and alibi evidence were full, fair and accurate statements of the law. Therefore, the trial court was not required to give the requested instructions. *Edwards v. State,* 540 S.W.2d 641 (Tenn.1976).

An eighteen count indictment was returned against the defendant. He was tried on ten counts, which involved six victims. He was found guilty on four counts involving three victims and not guilty on five counts, and the jury was not able to reach a verdict on one count. The defendant says these charges were improperly joined and that the refusal of the trial judge to sever the charges was error. The defendant says there were other offenses in the Nashville area for which he was not indicted but which were similar in *modus operandi* to the ones for which he was convicted. Therefore, the defendant argues that there could be other offenders with the same "signature." In regard to this theory, the defendant says the trial court should have granted his supplemental motion for discovery requesting "[a]ll reports of complaints received by the Metropolitan Police Department regarding charges of rape, sexual battery, attempt to commit or assault with intent to commit any sexual offense, and other sexual offenses from January 1, 1980 through the present."

Offenses may be joined in the same indictment if they constitute a common scheme or plan or if they are of the same or similar character. Rule 8(b), T.R.Cr.P. Under Rule 14(b)(1), T.R.Cr.P., severance of offenses for trial shall be allowed "unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." "In order to be 'parts of a common scheme or plan' as contemplated by Rule 8(b) and 14(b)(1), two or more sets of offenses must be so similar in *modus operandi* and occur within such a relatively close proximity of time and location to each other that there can be little doubt that the offenses were committed by the same person(s)." *State v. Peacock,* 638 S.W.2d 837, 840 (Tenn.Cr.App. 1982).

The offenses for which the defendant was tried had many similarities in the *modus operandi.* Each of the victims was a young, white female who lived in an apartment complex and was alone at the time of the offense. In each case the attacker would

be in the apartment when the victim arrived or would enter shortly after the victim entered the apartment. The attacker would cover the head of the victim or force her to turn her back so she could not see him. The attacker would force the victim to submit to cunnilingus and then force her to submit to vaginal intercourse. He would then demand that the victim rub his nipples as he performed vaginal intercourse. The offenses occurred from June of 1980 until January 1982. Each of the crimes occurred in apartment complexes which were in close geographic proximity.

■ We conclude the offenses were so similar in *modus operandi* and occurred within such a close proximity of time and location as to satisfy the requirement for joinder. We also conclude that the evidence in each of the offenses would be admissible upon the trial of any of the offenses in a separate proceeding. *See Collard v. State,* 526 S.W.2d 112 (Tenn.1975).

■ We do not think a severance is required because the defendant was not indicted for other offenses which occurred in the Nashville area and which were similar in *modus operandi* to the offenses on which he was convicted. There could be any number of reasons for the state not to prosecute the defendant for other offenses. The state's failure to indict the defendant for these other offenses does not necessarily mean that there was someone else with the same "signature" as the offender in the cases before us. We find also that the trial court did not err in denying the defendant's supplemental discovery motion. The defendant's request would have encompassed approximately one thousand police reports if it had been granted. These reports were not relevant to the defendant's cases.

The defendant filed a motion for continuance seeking additional time for counsel to prepare his defense. This motion was denied on May 20, 1982. The case was set for trial on June 14, 1982. The record reflects counsel was employed on March 26, 1982, to represent the defendant. The defendant contends this did not give him adequate time to prepare his alibi defense.

■ Whether to grant a continuance is within the discretion of the trial judge, and the appellate court will not set aside his ruling thereon unless the record demonstrates the accused was denied a fair trial by the refusal to grant a continuance or unless it can be reasonably concluded a different result would have been reached had the continuance been granted. *Nease v. State,* 592 S.W.2d 327 (Tenn.Cr.App. 1979).

■ The defendant presented an extensive alibi defense in this case. There is nothing to indicate he was denied a fair trial by the ruling of the trial court or a different result would have occurred had the continuance been granted. We conclude there was no abuse of discretion in denying a continuance.

■ We find no error in the refusal of the trial judge to permit individual, sequestered voir dire of the prospective jurors. The defendant relies upon the case of *Sommerville v. State,* 521 S.W.2d 792 (Tenn. 1975), to support his argument that the trial court erred in not allowing individual voir dire because the jurors had been subjected to potentially prejudicial material.

In examining this record, we do not find the defendant was laboring under the burden present in *Sommerville.* In *Sommerville,* the defendant was being retried, and the court held that the jurors should be examined individually with regard to their knowledge of the verdict and sentence the defendant received in his first trial.

In this case, the defendant claims individual voir dire should have been allowed because he was black, all of the victims were white, and there had been extensive publicity about the case. The record shows the defendant did not exercise all of his peremptory challenges nor challenge any juror for cause. There is nothing in this record to show the defendant was forced to accept any jurors that were prejudiced to him. The purpose of voir dire of prospective jurors is to select a fair and impartial jury.

This record does not indicate the defendant did not have a jury of this quality.

During the cross-examination of the defendant's brother, the state asked if he knew the defendant was in jail. The defendant insists this question stripped him of the "physical indicia of innocence," as discussed in *Willocks v. State,* 546 S.W.2d 819, 820 (Tenn.Cr.App.1976). In *Willocks* the defendant was in shackles throughout the trial. In this case, there was no showing that the defendant was in jail at the time of the trial. The question asked by the state referred to a time prior to the trial of this case. At most, this was harmless error.

The defendant claims the misconduct of the state's attorney denied him a fair trial. He lists eight instances of misconduct, which he claims denied him a fair trial.

He first claims the state should have revealed, in response to his pretrial discovery motion, the existence of a Jane Doe complaint, which charged a black man with raping a white woman. The defendant claims this complaint was exculpatory evidence. The record shows a white woman, whose husband is an inmate in the penitentiary, charged a guard at the penitentiary with raping her. The grand jury returned a no true bill on this charge. This was not exculpatory evidence in the case against the defendant, and there was no requirement for the state to reveal this complaint to the defendant.

The defendant again raises the matter of the state showing that the defendant was in jail. We have previously held in this opinion that reversible error was not committed in this regard.

The defendant claims that the state was guilty of misconduct because the district attorney told the jury during voir dire that the trial court would instruct them that an alibi defense was one easily fabricated. Defense counsel objected to the remark, and the trial court told the jury he was not going to instruct them that an alibi defense was one easily fabricated. Reversible error did not result from the erroneous comment by the state because the trial court's instruction cured the error. *State v. Compton,* 642 S.W.2d 745 (Tenn.Cr.App. 1982).

The defendant claims prosecutorial misconduct because the state peremptorily excused the only black female juror. There is no showing of systematic exclusion of blacks from the jury. The state may use their peremptory challenges as they choose. *Drew v. State,* 588 S.W.2d 562 (Tenn.Cr. App.1979).

The defendant complains of four allegedly improper remarks during closing argument by the district attorney. He designates these remarks as numbers 5, 6, 7 and 8 under issue number VII.

The defendant did not enter a contemporaneous objection to remarks numbered 6, 7 and 8, and the defendant did not raise numbers 7 and 8 in his motion for a new trial. These issues are waived because a contemporaneous objection must be made to improper argument. *State v. Compton,* 642 S.W.2d 745 (Tenn.Cr.App. 1982); *Rye v. State,* 532 S.W.2d 941 (Tenn. Cr.App.1975). Remarks numbered 7 and 8 are waived also because the defendant did not raise these remarks in the motion for a new trial. There is no merit to the defendant's complaint that these remarks should be considered by the Court because they amount to plain error. We do not find that these remarks seriously affected the fairness or integrity of the trial.

With regard to remark number 5, we find that the district attorney did improperly state that a witness had said something to him which does not appear as testimony at trial. However, in the overall view of this record, this remark was insignificant both in content and context and does not amount to reversible error. Rule 36(b), T.R.A.P.

The defendant contends the in-court identification should not have been allowed. He argues that "because of the suggestiveness of the identification procedures used and the indicia of unreliability of the identi-

fication, that under the totality of the circumstance [he] has been denied due process by the admission of the identification testimony."

■ The trial judge found the lineup was not constitutionally tainted. The record supports this finding. The identification procedures in this case were not so suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Any inconsistencies in the descriptions of the attacker are to be resolved by the jury, as the finder of fact. *See White v. State,* 533 S.W.2d 735 (Tenn.Cr.App. 1975).

At the time of the defendant's arrest, officers searched a vehicle parked in the driveway of the place where the defendant lived and seized a blue, hooded sweatshirt, a pistol, a can of mace and five pills. Each of these items was introduced in evidence and linked the defendant to the crimes. The defendant says these items were seized in the course of an unlawful search because the police did not have a search warrant for the vehicle or consent to search the car.

At the hearing on the motion to suppress the evidence, the defendant testified the police asked if they could search the vehicle and that he told them he could not consent to a search because he did not own the vehicle. The police left, and Francine Harris, with whom the defendant lived, came home. The police returned about three hours later. Harris consented to a search of the car. The defendant further testified that the car belonged to Shirley Harris, the mother of Francine Harris.

The defendant argued at the suppression hearing that the search was illegal because the consent given by Francine Harris was coerced. The state argued to the trial judge that the defendant had no right of privacy in an automobile that he neither owned or occupied at the time of the search. Additionally, the state relied upon valid consent to the search and the doctrine of plain view. The trial judge denied the motion to suppress but did not state the basis for his ruling.

■ The evidence at the suppression hearing shows the defendant had no standing to complain of the search of the automobile because he had neither a property nor possessory interest in the automobile. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The search was valid as to the defendant, and the trial court did not err in denying the defendant's motion to suppress.

DWYER and O'BRIEN, JJ., concur.