# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 2000 Session

## RICKY LEE BEAMON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 217089     Douglas A. Meyer, Judge**

---

**No. E1999-00614-CCA-R3-CD**
**September 8, 2000**

---

This appeal arises from the trial court's denial of the petitioner's post-conviction petition. On December 1, 1996, the petitioner was found guilty by a Hamilton County jury of aggravated burglary and theft over $500. The convictions were affirmed on appeal. On August 4, 1997, the petitioner filed a *pro se* petition for post-conviction relief, which was denied by the trial court after an evidentiary hearing. The petitioner now appeals the denial of his petition. After careful review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Laura Rule, Knoxville, Tennessee (on appeal) and Charles Dupree, Chattanooga, Tennessee (at trial) for the appellant, Ricky Lee Beamon.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bates W. Bryan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 4, 1994, Laura and James Pettit's home was burglarized. The thief took property valued at approximately $1,400, which included an antique pocket watch, Mrs. Pettit's wedding band, a blue stone ring, a green stone ring, a violin and case, and a trombone case. Prior to the trial, Mr. Pettit could not identify the burglar for police but identified the petitioner, as the man he had seen with the stolen items, when he saw him in the courtroom. The police subsequently found some of the stolen items at a pawn shop, which led them to Gertrude Hall. Ms. Hall had sold the items for the petitioner's sister, Ellen Beamon. This trail eventually led authorities to the petitioner himself. On May 24, 1995, a jury convicted him of aggravated burglary and theft over $500, and he was sentenced as a career offender (60%) to concurrent sentences of fifteen years and six years. The convictions were affirmed by this court on December 4, 1996, and permission to appeal to the

supreme court was denied on July 9, 1997. <u>State v. Beamon</u>, No. 03C01-9601-CR-00030, 1996 WL 698962 (Tenn. Crim. App., Knoxville, Dec. 4, 1996), <u>perm</u>. <u>app</u>. <u>denied</u>, (Tenn. 1997).

Less than a month later, the petitioner filed a *pro se* petition for post-conviction relief claiming ineffective assistance of trial counsel, withholding of exculpatory evidence by the State, and the use of "illegal" evidence at trial to convict him. An evidentiary hearing was held on September 10 and November 30, 1998, after which the trial court denied the petition. The petitioner now appeals to this court on the issue of ineffective assistance of counsel. Upon careful review of the record, we find that the evidence does not preponderate against the trial court's decision to deny the post-conviction petition and, therefore, affirm the judgment of the trial court.

## STANDARD OF REVIEW

Because the defendant filed his *pro se* petition on August 4, 1997, it is governed by the 1995 Post-Conviction Procedure Act. At the evidentiary hearing, the defendant bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f); <u>Hicks v. State</u>, 983 S.W.2d 240, 245 (Tenn. Crim. App.), <u>perm. app. denied</u>, (Tenn. 1998). Clear and convincing evidence means that there is "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." <u>Hicks</u>, 983 S.W.2d at 245 (citing <u>Hodges v. S.C. Toof & Co.</u>, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). On appeal, we are bound by the trial court's findings of fact unless the record preponderates against those findings. <u>Hicks</u>, 983 S.W.2d at 245.

When ineffective assistance of counsel is alleged, a convicted defendant must show two things before a reversal of his conviction is required: (1) that counsel's performance was deficient; and (2) that such deficient performance prejudiced the defendant. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). To prove deficient performance of counsel, the defendant must show that counsel made such serious errors that he or she was not functioning as counsel envisioned by the Sixth Amendment. <u>Id.</u> This inquiry focuses on whether counsel's assistance was reasonable under the circumstances and is treated very deferentially by the court. <u>Id.</u>, 466 U.S. at 688-89, 104 S. Ct. at 2065. There is a strong presumption on appeal that counsel's conduct falls within the range of reasonable professional performance, and we must evaluate counsel's performance from his or her perspective at the time of the alleged error in the context of the totality of the circumstances. <u>Hicks</u>, 983 S.W.2d at 246. In Tennessee, the evidence showing that an attorney failed to prepare a sound defense or to present witnesses must be substantial before ineffective assistance of counsel will be found. <u>Id.</u>

To prove prejudice, the defendant must show that counsel's errors were so serious that he was deprived of a fair trial. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, even if error occurred by counsel, a conviction is not to be set aside if the error had no effect on the outcome of the trial. <u>Id.</u>, 466 U.S. at 691, 104 S. Ct. at 2066.

The petitioner in the present case alleges a number of things that his trial attorney failed to do in developing a trial strategy and in properly investigating the facts of the case. Specifically, he alleges that his trial attorney failed to interview or subpoena a favorable witness, Claude Jones;

failed to interview Gregory Herkley, who was first identified as the robber; failed to validate the value of the items taken; failed to investigate whether Ellen Beamon was threatened unless she changed her story; failed to secure any expert witness to show the unreliability of eyewitness testimony; and failed to advise the petitioner that the State had filed notice of intent to seek enhanced punishment. A review of the record shows that these claims are without merit.

The petitioner testified at the post-conviction hearing that his trial attorney told him that the maximum sentence he would receive was ten years. His attorney, who was the petitioner's third lawyer, refuted this testimony and produced a letter from the prosecutor, dated approximately two months prior to the trial, offering the petitioner eighteen years at 45%, which the petitioner rejected. The petitioner stated at trial that he would have rejected an offer of a twelve-year sentence. His attorney stated that the petitioner was fully aware of his fifteen-year exposure as a career criminal but chose to go to trial.

### Failure to Investigate

The petitioner further testified that his attorney did not interview a key defense witness, Claude Jones,[1] who apparently had seen the burglar running away from the Pettits' house and identified him to police as Gregory Herkley. During discovery, the petitioner's attorney learned that Herkley had an iron-clad alibi and felt that Jones's testimony would only hurt the petitioner's case. The attorney testified that he interviewed all of the State's witnesses before trial, and the petitioner did not ask to have Mr. Jones subpoenaed to testify. At trial, the petitioner's attorney vigorously cross-examined the detective and Mr. Pettit about Jones and Herkley and directed the jury's attention to the fact that Mr. Pettit originally told the police that he could not identify the robber but changed his story at trial. It was also brought out at trial that Gertrude Hall, Ms. Beamon's friend who pawned the items, had originally told detectives that she did not receive the stolen items from the petitioner's sister but from her boyfriend, a lead that was not pursued by police. The attorney stated that he was trying to create reasonable doubt that the petitioner was the burglar. We will not second guess the attorney's trial strategy. His performance was reasonable under the circumstances.

Additionally, the petitioner claims that his attorney failed to investigate Ellen Beamon's (petitioner's sister) claim that the police threatened to take her children from her if she did not testify against the petitioner. The petitioner's attorney testified at the post-conviction hearing that when he went to see Ms. Beamon at her home, she admitted that she had lied to the police when she told them initially that she received the stolen property from someone else and admitted that it was the petitioner who had given her the items to pawn. Ms. Beamon was a State's witness at trial and testified that the petitioner gave her the items. The petitioner's attorney then cross-examined her about inconsistencies in her statements to police and the conflict between her desire to tell the truth under oath and the love of her brother. A tape recording of Ms. Beamon was also introduced into evidence in which she told a detective that the petitioner had given her the stolen property to pawn.

---

[1] In other portions of the transcript, this eyewitness is referred to as "Carl" Jones. We will use "Claude" Jones for continuity.

Understandably, the attorney believed that Ms. Beamon's testimony severely hurt the petitioner's case. Ms. Beamon could not be found to testify for the petitioner at the post-conviction hearing. In the end, it appears that this witness was present at trial and did not help the petitioner's case in any way. We cannot see anything else that the attorney could have done to ascertain the substance of this witness's testimony and to protect his client from its damaging effects.

## Withholding of Evidence

The petitioner's related allegation that the State withheld evidence that someone else committed the crime is likewise without merit. The State gave the petitioner's counsel evidence linking the petitioner to the robbery through other witnesses, and the attorney had information about Herkley's alibi. At the post-conviction hearing, the petitioner's attorney testified that it was brought out during the trial that the police had confirmed Herkley's alibi. Mr. Pettit made an in-court identification of the petitioner, and the petitioner's sister gave very damaging testimony linking the petitioner to the crime. It is difficult for us to conceive of how more information from the State on Herkley's alibi could have exonerated the petitioner. Additionally, the petitioner has not offered any evidence to support his claim that the State withheld fingerprint evidence on two of the stolen items, a violin and trombone, and, thus, has failed to carry his burden of proof on this issue.

## Value of Stolen Property

The petitioner's contention that his attorney failed to show the proper value of the property stolen is likewise without merit. He alleges that his attorney refused to interview the pawn shop owner where some of the items were recovered to see what the actual value was prior to the trial and failed to have the items brought into court so the jury could value them. At the post-conviction hearing, the petitioner claimed that he called the pawn shop owner himself and was told that the value was only $30-40, which would have reduced the theft charge to a misdemeanor. The petitioner agreed, however, that his attorney questioned the shop owner at trial about the pawn shop value, which is not the market value, and the property owner, Mr. Pettit, also testified as to the value of the items. In addition, the attorney testified that he objected to the jury instructions that did not include theft under $500, which was then added by the court. Therefore, the jury was allowed to consider the misdemeanor theft but obviously rejected it. Finally, the petitioner offered no evidence at the post-conviction hearing of the value of the items and, therefore, failed to carry his burden to show that his attorney was ineffective in not establishing a different value than what was claimed by the State.

## Eyewitness Testimony Expert

The petitioner has also claimed that his trial counsel was incompetent for not having an expert witness testify as to the unreliability of eyewitness testimony. This claim is also without merit. This court has recently spoken on the question of expert testimony regarding eyewitness identification in State v. Eddie L. Coley, Jr., No. 01C01-9707-CC-00270, 1998 WL 712838 (Tenn. Crim. App., Nashville, Oct. 13, 1998) (Tipton, J., dissenting), perm. appeal granted (Tenn. April 19, 1999). Citing State v. Wooden, 658 S.W.2d 553 (Tenn. Crim. App. 1983) and State v. Ward, 712 S.W.2d 485 (Tenn. Crim. App. 1986), this court concluded that "[a]s with any proferred expert testimony, the admission of expert testimony on the process of eyewitness identification remains a matter of the trial court's sound discretion in each individual case." Coley, 1998 WL 712838, at *3. Tennessee Rule of Evidence 702 allows expert testimony if "scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." The dissent in Coley argued that there should have been a hearing as to the admissibility of the expert eyewitness testimony, the witness's certainty of identification having no positive correlation to accuracy contradicting the jury instructions as to the certainty of the witness testimony. Our supreme court granted permission to appeal in Coley, oral argument being heard in February 2000.

We note that the trial attorney attempted to exploit what appeared to be problems in the State's eyewitness proof. The attorney testified at the post-conviction hearing that he thoroughly explored the discrepancy between Mr. Pettit's and Claude Jones's initial identification of Herkley as the robber and Mr. Pettit's subsequent courtroom identification of the petitioner during the trial as the thief. Thus, the jury had the conflicting eyewitness evidence before it. Additionally, the petitioner has not offered any evidence that expert testimony in this regard would have made any difference in this case. This issue is without merit.

Even if the attorney's performance had been deficient as alleged, we fail to see how the outcome of the trial was affected. The State's proof in this case was unlike that in Coley, which consisted solely of the identification of the defendant by two witnesses. There was strong evidence presented against the petitioner, including the testimony of his sister (Ellen Beamon), Gertrude Hall, and the pawn shop owner. These witnesses connected the stolen items to the petitioner independently of Mr. Pettit's courtroom identification. It was Ms. Beamon who received the stolen property from the petitioner and gave it to Ms. Hall to pawn for her. This court has already held on direct appeal that the evidence was sufficient to convict the petitioner beyond a reasonable doubt. None of the above actions or inactions by the petitioner's attorney would likely have changed the jury's guilty verdict, and the petitioner has failed to carry the burden of showing prejudice in any event.

## CONCLUSION

Because the record does not preponderate against the trial court's finding that the attorney provided effective counsel, we affirm the judgment of the trial court in denying the petitioner's post-conviction petition.

_____
ALAN E. GLENN, JUDGE