**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JUNE 1998 SESSION**

FILED

October 13, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 01C01-9707-CC-00270** |
| Appellee, | ) | |
| | ) | **WILLIAMSON COUNTY** |
| VS. | ) | |
| | ) | **HON. DONALD P. HARRIS,** |
| **EDDIE L. COLEY, JR.,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Aggravated Robbery) |

---

**SEPARATE CONCURRING OPINION**

I agree that the proffered expert testimony regarding eyewitness testimony should have been excluded. I am unable, however, to join with the majority in concluding that the admission or non-admission of expert testimony should be exercised under a judicial discretion standard on a case by case basis. Although clearly subject to varying interpretations, I believe the current state of the law in Tennessee on this issue forbids the introduction of expert testimony regarding eyewitness identification.[1] See State v. Wooden, 658 S.W.2d 553 (Tenn. Crim. App. 1983); see also State v. Ward, 712 S.W.2d 485 (Tenn. Crim. App. 1986). Indeed, Judge Byers, writing on behalf of this court, concluded that the evaluation of the credibility of eyewitness testimony is a matter within the province of the jury and does not require expert testimony. Wooden, 658 S.W.2d at 557. Because I believe this reasoning sound, I would adhere to the position of a *per se* exclusionary rule regarding

---

[1] In McMullen v. State, 714 So.2d 368 (Fla. 1998), reh'g denied, (June 10, 1998), cited by the majority, a comprehensive review of various state and federal jurisdictional positions regarding the admissibility of eyewitness expert testimony was presented. Although the majority in the present case concludes that Tennessee permits, on a discretionary basis, expert eyewitness testimony, McMullen and other legal treatises have, in interpreting Wooden, concluded that Tennessee has adopted a *per se* rule of inadmissibility. See McMullen, 714 So.2d at 371; Annotation, *Experts on Eyewitness Testimony*, 46 ALR 4th 1047, 1105 (1986).

eyewitness expert testimony.[2]

The introduction of expert testimony is controlled by Rule 702, Tenn. R. Evid. This rule provides that "[i]f scientific, technical or other specialized knowledge will <u>substantially</u> assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify in the form of an opinion or otherwise." (Emphasis added). Whether the proffered expert testimony will <u>substantially</u> assist the trier of fact is the touchstone of Rule 702 and, thus, is the ultimate factor in determining whether such eyewitness expert testimony is admissible.[3]

It is conceded that expert testimony on eyewitness identification is introduced to alert the jury to the fallibility, inaccuracies, and inconsistencies of human perception based upon objective generalities adduced from controlled experiments.[4] <u>See generally</u> <u>McMullen</u>, 712 So. 2d at 377 (Anstead, J., concurring in part and dissenting in part). Indeed, as noted in <u>McMullen</u>, one leading commentator on the subject advances the argument "that the average juror actually knows little about factors

---

[2]At the outset, it is prudent to note the three views on the admissibility of eyewitness expert testimony that have emerged:

> (1) **The discretionary view**, which holds that the admission of expert testimony is within the discretion of the trial judge. Currently this is the majority view among both federal and state courts;

> (2) **The prohibitory view**, which expressly prohibits the use of this type of expert testimony. <u>See, e.g.</u>, <u>United States v. Holloway</u>, 971 F.2d 675 (11th Cir. 1992), <u>cert. denied</u>, <u>Rudder v. United States</u>, 507 U.S. 962, 113 S.Ct. 1390 (1993); <u>State v. Goldsby</u>, 650 P.2d 952 (Ore. Ct. App. 1982); <u>Commonwealth v. Simmons</u>, 662 A.2d 621 (Pa. 1995), <u>cert. denied</u>, 516 U.S. 1128, 116 S.Ct. 945 (1996); and

> (3) **The limited admissibility view**, which concludes that the trial court abuses its discretion in excluding this evidence in cases where there is no substantial corroborating evidence. Only two courts have adopted this position. <u>See, e.g.</u>, <u>United States v. Downing</u>, 753 F.2d 1224 (3d Cir. 1985); <u>People v. McDonald</u>, 690 P.2d 709 (Cal. 1984).

<u>McMullen</u>, 712 So.2d 368, 370 (Fla. 1998), <u>reh'g denied</u>, (June 10, 1998). Again, the majority in the present case adopts the majority discretionary position. However, I find that this position is inconsistent both with prior holdings of this court and with Tenn. R. Evid. 702.

[3]It should be noted that both <u>Wooden</u> and <u>Ward</u> were decided prior to the adoption of the Tennessee Rules of Evidence (*effective date January 1, 1990*).

[4]As illustration, in the present case, the appellant's expert was "prepared to provide testimony about the areas of the process of eyewitness identification, the relationship between stress and memory for an event, cross-racial identification, the relationship between the confidence that a witness has in the accuracy of his or her identification and the accuracy of that identification, and the effect time has on the accuracy of remembering something seen."

2

affecting the accuracy of eyewitness identifications" and "[w]hile most people are satisfied in believing they have 'common sense,' the memory process involves factors that are often counterintuitive."[5] Id. at 377 (citing Cindy J. O'Hagan, *When Seeing is Not Believing: The Case for Eyewitness Expert Testimony*, 81 GEO.L.J. 741, 760-61 (1993) (footnotes omitted)). Such generalizations do not apply to every witness' ability of perception and do not substantially assist the trier of fact as the trustworthiness of eyewitness observations is not generally beyond the common knowledge and experience of the average juror. Moreover, if indeed the purpose of the expert testimony is to contradict "common sense," the testimony would appear to be more akin to impeachment testimony than substantial assistance. In sum, expert testimony on eyewitness identification is not needed to explain "common sense." The making of judgments of identification and the awareness of the factors bearing on the reliability of such judgments are so much a part of the day to day experiences of ordinary laypersons that it must be concluded that the jury is capable of making an intelligent assessment of the reliability of the identification testimony without need for expert testimony as to the human perceptional processes. See Wooden, 658 S.W.2d at 557; see, e.g., People v. Kelley, 631 N.Y.S.2d 926 (N.Y. App. Div. 1995), appeal denied, 664 N.E.2d 515 (N.Y. 1996). Accordingly, it is not appropriate for the trial judge to take from the jury their own determination as to what weight or effect to give to the evidence of the eyewitness and the identifying witnesses, and to have that determination put before them on the basis of the expert testimony as proffered. See, e.g., United States v. Daniels, 64 F.3d 311 (7th Cir. 1995), cert. denied, 516 U.S. 1063, 116 S.Ct. 745 (1996); State v. Coleman, 486 So.2d 995 (La. Ct. App.), cert. denied, 493 So.2d 633 (La. 1986); Simmons, 662 A.2d at 621; People v. Anderson, 630 N.Y.S.2d 77 (N.Y. App. Div.), appeal denied, 661 N.E.2d 1383 (N.Y. 1995).

---

[5]For example, some psychologists in this field argue that their research revealed commonly held misconceptions of the general public, *e.g.*, (1) "The more confident a witness is, the more accurate the testimony is likely to be," and (2) "Police officers make better witnesses than ordinary citizens." See McMullen, 712 So.2d at 377 (citing Elizabeth F. Loftus and James M. Doyle, EYEWITNESS TESTIMONY: CIVIL AND CRIMINAL (3d ed. 1997)).

The adversarial system of justice has traditionally relied upon cross-examination as a mechanism to alert the jury as to any inaccuracies or inconsistencies in the testimony of an eyewitness and, when coupled with proper cautionary instructions regarding eyewitness testimony, the jury is presumed to be able to assess the credibility and reliability of each witness. It is the responsibility of counsel, during cross-examination, to inquire into the witness' opportunity for observation, capacity for observation, attention, interest, and distraction or division of attention. Accordingly, I conclude that the problem of potentially unreliable eyewitness testimony is not resolved by the introduction of expert testimony, but rather, the problem is alleviated by proper cautionary instructions setting forth the factors to be considered in evaluating eyewitness testimony and other existing safeguards such as cross-examination, closing argument, and the trial court's power to suppress testimony if the identification procedure rendered it unreliable. The use of expert testimony could not only lengthen the time and increase the cost of trials, but could also divert the jurors from the true issues or cause them to abdicate their role as the arbiter of credibility in the court room.

As such, I adhere to the *per se* rule of exclusion pronounced in State v. Wooden.

_____
DAVID G. HAYES, Judge