IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1998 SESSION

FILED

October 13, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9707-CC-00270 |
| Appellee, | ) | |
| | ) | WILLIAMSON COUNTY |
| VS. | ) | |
| | ) | HON. DONALD P. HARRIS, |
| EDDIE L. COLEY, JR., | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Robbery) |

FOR THE APPELLANT:

JOHN HENDERSON
Public Defender

VANESSA PETTIGREW BRYAN
LARRY D. DROLSUM
Asst. Public Defenders
P.O. Box 68
Franklin, TN 37065-0068

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

KAREN M. YACUZZO
Asst. Attorney General
John Sevier Bldg.
425 Fifth Ave., North
Nashville, TN 37243-0493

JOE D. BAUGH
District Attorney General

MARK PURYEAR
DEREK SMITH
Asst. District Attorneys General
P.O. Box 937
Franklin, TN 37064

OPINION FILED:_____

AFFIRMED

JOHN H. PEAY,
Judge

# O P I N I O N

The defendant was indicted for aggravated robbery, a class B felony. His first trial resulted in a hung jury. Upon retrial, the jury convicted him as charged. Following a sentencing hearing, he was sentenced as a Range I standard offender to twelve years incarceration, the maximum sentence. The defendant now appeals,[1] arguing that the trial court erred in excluding expert testimony regarding eyewitness identification, that the convicting evidence was insufficient as a matter of law, and that his sentence was excessive because the trial court failed to give due weight to certain mitigating factors. We affirm.

On July 15, 1995, the victims, Sarah Blumberg and Jennifer McMillen, were working at a Baskin-Robbins ice cream shop in Brentwood. Around 1:00 p.m., the defendant, a nineteen-year-old African-American man, entered the store, looking no more suspicious than any customer. Ms. McMillen commented to Ms. Blumberg that the defendant's black t-shirt with unusual writing across it was "cool." While the victims were preparing the defendant's order, the defendant pointed a gun at them and ordered them to the ground. The defendant stood only a few feet from the victims, both of whom were afraid they would be killed. One of the victims was instructed to put the store's money into a bag. The defendant then ordered both victims to the walk-in freezer in the back of the store, telling them that if they came out of the freezer while he was still there, he would shoot them. The victims remained in the freezer until they heard a customer enter the store and call for a clerk, at which point they went to the store next door and called the police.

The police failed to find any fingerprints or other physical evidence at the

---

[1]The defendant requested permission to late-file his notice of appeal, which this Court granted.

2

crime scene.  However, that afternoon, each of the victims gave separate descriptions of the robber as an obese African-American man around 5'9"[2] and in his twenties, and each helped the police prepare separate composite pictures of the robber.  Nine days after the robbery, Ms. Blumberg identified the defendant in a photographic line-up.  Five months after the robbery, Ms. McMillen identified the defendant in the same photographic line-up.

At trial, the sole issue of dispute was one of identification.  The State's case rested on the victims' testimony and their pre-trial and in-court identifications of the defendant as the robber.  On cross-examination, both of the victims admitted that in the photographic line-up, the defendant was the only one wearing an unusual black t-shirt.  Ms. Blumberg also testified that she expected to find a picture of the robber in the photographic line-up, and Ms. McMillen conceded that prior to looking at the photographic line-up, she knew a suspect was already in custody awaiting trial.

The defendant presented an alibi defense and maintained that another suspect, whom the police failed to adequately investigate, committed the robbery.  The defendant's uncle testified that he was with the defendant the day of the robbery, including the time it occurred.  Another defense witness, Brandon Duhon, testified that he was working at a store near Baskin-Robbins at the time of the robbery.  According to his testimony, he had seen an old yellowish car drive by his store thirty minutes before the robbery.  He then watched the two African-American males who were in the car approach the Baskin-Robbins store.  After the robbery, he reported to the police what he had seen, describing the car and describing the driver as a tall, slender man with braided hair.  He could not describe the passenger.  He told police that the car had looked

---

[2]Ms. Blumberg, who is 5'6", testified that the robber was a few inches taller than she, and Ms. McMillen testified that the robber stood 5'9".

"suspicious" as if the driver and the passenger were "casing" the area. Upon further examination, he admitted that the car seemed "suspicious" only after he had heard about the robbery.

Two detectives involved in investigating the robbery were called by the defense. According to their testimony, when the police found a car matching the description Mr. Duhon gave them, they discovered the car was registered to Demetrius Robinson, who lived one to one and one-half miles from the scene of the robbery. Even though Mr. Robinson was a tall, slender African-American man with braided hair, Mr. Duhon could not positively identify him. When questioned, Mr. Robinson said his brother, Tony Smith, had lived with him. The investigating officer believed "Tony Smith" was a fake name because it was "generic," and a report later obtained by the police indicated that Mr. Robinson did not have a brother. The police staked out Mr. Robinson's apartment in the hopes of spotting Tony Smith, but to no avail. Finally, state records disclosed that an "Anthony DeWayne Smith," born in March 1975, lived at Mr. Robinson's address. Although the investigating officer knew a picture of Anthony DeWayne Smith was on file with the Metro-Nashville police department, he did not include it in any photographic line-up shown to the victims. He justified this decision on the grounds that he could neither confirm nor controvert the information Mr. Robinson supplied and because the victims reported seeing only one robber, not two.

The defendant also sought to introduce the testimony of Dr. Michael G. Johnson. According to the defense proffer, Dr. Johnson would testify regarding the process of eyewitness identification; the relationship between stress and memory for an event; cross-racial identification; the relationship between the confidence witnesses have in the accuracy of their identifications and the actual accuracy of their identifications; the effect time has on the accuracy of remembering something seen; and the suggestibility

4

of the photographic line-ups used in the instant case. The State objected to his testimony on the ground that it was unnecessary to help the jury decide the issue of identification. The trial court agreed, excluding Dr. Johnson's testimony.

Based on the evidence presented to it, the jury found the defendant guilty of aggravated robbery. At the sentencing hearing, the defendant testified, but did not dispute anything in the presentence report. The defendant admitted he was arrested as a juvenile on a weapons charge and was arrested and convicted for shoplifting in July 1994. He also admitted he was arrested for and convicted of three aggravated robberies in Davidson County in early 1995, although he testified he actually committed robbery with a gun in Davidson County five to ten different times from late 1994 to early 1995. He acknowledged he was on bail for the Davidson County robberies at the time of the Baskin-Robbins robbery in the instant case, and at the time of the sentencing hearing, he was in the process of serving twenty years in prison for three of those robberies. He admitted to previously experimenting with marijuana, but he maintained that the last time he had used it was when he was seventeen years old. He also stated that he had graduated high school in two years, had been a good student, and had a good past employment record.

The defendant's parents also testified. According to them, the defendant was not a disciplinary problem while growing up, had been a good student, and had a satisfactory work record upon graduating high school. Both parents maintained that the defendant's recent criminal behavior was "out of character" for him.

The defendant submitted several mitigating factors for the trial court's consideration, including the following: (1) that the defendant had the capacity to adjust to law-abiding behavior; (2) that the character, habits, mentality, propensities, and

5

activities of the defendant indicated he was unlikely to commit another offense; (3) that the defendant had an excellent employment record; (4) that the defendant's educational background, homelife, sobriety, or satisfactory social adjustment suggested leniency; (5) that there was a strong possibility of successful treatment and training, and that the defendant was likely to comply with the terms of probation; and (6) that the defendant had a good prior performance on probation. The trial court, however, found no mitigating factors and found the following enhancing factors: (1) that the defendant had a previous history of criminal conduct; (2) that the offense involved more than one victim; and (3) that the defendant was on bail at the time of the offense. As such, the trial court sentenced the defendant as a Range I offender to twelve years in prison, the maximum sentence for a Class B felony, to run consecutively to the twenty-year sentence the defendant is currently serving for the Davidson County robberies. The defendant now appeals.

The defendant first argues that the trial court erred by excluding Dr. Johnson's expert testimony on the process of eyewitness identification and that this error prevented him from rebutting the victims' eyewitness testimony. The defendant recognizes that trial judges retain discretion to admit such expert testimony, but he maintains that this Court's opinions in State v. Wooden, 658 S.W.2d 553 (Tenn. Crim. App. 1983), and State v. Ward, 712 S.W.2d 485 (Tenn. Crim. App. 1986), unfairly discourage such testimony.

It may no longer be true, as this Court has previously observed, that the "great weight of authority in this country is that the study of the reliability of eyewitness identification has not attained that degree of exactitude which would qualify it as a specific science." Ward, 712 S.W.2d at 487. Even so, expert testimony on the process of eyewitness identification is not per se inadmissible in Tennessee. As with any proffered expert testimony, the admission of expert testimony on the process of eyewitness

6

identification remains a matter of the trial court's sound discretion in each individual case. See id.; see also McMullen v. State, 23 Fla. L. Weekly S207 (Fla. Apr. 9, 1998)(acknowledging that the majority of states have adopted an "abuse of discretion" standard for reviewing the admissibility of expert testimony on eyewitness identification). In the instant case, while the admission of Dr. Johnson's testimony might have been helpful to some degree, we do not find abuse of discretion in the trial court's refusal to admit it. See Ward, 712 S.W.2d at 487.

In an issue closely related, the defendant contends that if the trial court would have admitted Dr. Johnson's expert testimony, as it should have, then the jury would have weighed the evidence differently and arrived at a not-guilty verdict. Because the trial court wrongfully excluded Dr. Johnson's expert testimony, the defendant continues, the jury did not have sufficient evidence upon which to base a verdict. However, we have concluded that the trial court did not abuse its discretion in excluding Dr. Johnson's expert testimony. Moreover, we conclude that the victims' eyewitness testimony sufficiently supports the jury's guilty verdict. Accordingly, this argument lacks merit.

Finally, the defendant argues that his sentence is excessive. He disputes neither the applicability of the enhancing factors found by the trial court nor the consecutive nature of his sentence. Instead, he contends that the trial court erred in imposing the maximum sentence in the applicable range without giving due weight to the mitigating factors he presented. The State concedes that three of the suggested mitigating factors should have been considered, but contends that the trial court's failure to do so must be considered harmless error because the applicable mitigating factors are entitled to so little weight that the sentence imposed is nevertheless proper.

We agree with the State that suggested mitigating factors (1), (2), and (5), which concern the defendant's potential for rehabilitation, are not applicable. There was simply no evidence presented at the sentencing hearing that would support the consideration of these mitigating factors. To the contrary, the evidence shows that the defendant's likelihood of committing other similar crimes is rather high: In July 1994, he was arrested for shoplifting, and then in late 1994 to early 1995, by his own admission he committed a large number of aggravated robberies in Davidson County. Then, just months later, while on bail for those aggravated robberies, he committed the aggravated robbery charged in this case. Given this, the trial court did not err in not considering suggested mitigating factors (1), (2), and (5).

The defendant also contends mitigating factors (3), (4), and (6) should have been considered by the trial court. The State concedes the application of each of these mitigating factors, but argues that the application of these factors should not affect the length of sentence imposed.

First, we question the applicability of factor (6), that the defendant has a good prior performance on probation, because the record is confusing as to whether the defendant was ever on probation and is devoid of evidence that any prior probationary term was successfully completed. At the sentencing hearing, the defendant maintained he was placed on probation as a result of his arrest as a juvenile on a weapons charge, but he also testified that charge was dismissed. According to the presentence report, a prior weapons charge as a juvenile could not even be verified. The defendant did not receive probation for any of his other prior convictions. Without some other evidence that might clarify whether the defendant was placed on probation and if so, successfully completed it, we are reluctant on this record to determine that factor (6) should apply.

As to factors (3) and (4), even assuming that evidence of mitigation existed, the applicable enhancing factors---which the trial court obviously gave great weight and which the defendant does not dispute---so strongly outweigh the mitigating factors that the mitigating factors pale in comparison. See generally State v. Ruane, 912 S.W.2d 766, 785 (Tenn. Crim. App. 1995)(stating, "Even if some evidence of mitigation exists, the applicable enhancement factors so strongly outweigh the mitigating factors that the maximum sentence is warranted."). The fact that the defendant maintained a couple of jobs, was a good student, and did not cause his parents disciplinary problems as a child cannot compete with the considerations that the defendant robbed two victims at gunpoint while on bail for numerous other aggravated robberies. Considering that, the trial court's decision to sentence the defendant to twelve years incarceration is not erroneous.

In sum, the trial court did not abuse its discretion in excluding the proffered expert testimony on eyewitness identification, and the evidence presented is sufficient to sustain the jury's guilty verdict. Moreover, the twelve-year sentence imposed is not excessive under the circumstances of this case. The defendant's conviction and sentence is affirmed.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
DAVID G. HAYES, Judge