# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 12, 2003 Session

## STATE OF TENNESSEE v. DOUGLAS MARSHALL MATHIS

### Appeal from the Circuit Court for Houston County
### No. CR-4532     Robert E. Burch, Judge

### No. M2002-02291-CCA-R3-CD - Filed March 3, 2004

Gary R. Wade, P.J., dissenting.

Whether properly assigned or not this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984). Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

(a) The record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused [must not have waived] the issue for tactical reasons; and
(e) consideration of the error must be "necessary to do substantial justice."

Id. at 641-42. Our supreme court characterized the Adkisson test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

Initially, the record contains the entire transcript of the trial, including the closing arguments. While defense counsel did not present as a ground for relief in the motion for new trial any prosecutorial misconduct in closing argument, the issue was raised on appeal and the defendant has asked this court to consider the issue under the plain error doctrine. Both the state and the defense have addressed the merits of the issue in their respective briefs. Secondly, this court is guided by

well-established and unequivocal rules governing the content of closing argument. A breach of these rules may warrant a new trial. See, e.g., State v. Cribbs, 967 S.W.2d 773, 786 (Tenn. 1998); State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994); State v. Stephenson, 878 S.W.2d 530, 541 (Tenn. 1994); State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); Lackey v. State, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978). Third, improper or inflammatory comments during closing argument infringe upon a defendant's right to a fair and impartial jury, a jury guided by reason and logic rather than passion or caprice. Fourthly, the record gives no indication that the failure to object qualified as a strategy of defense. Finally, in my view, analysis of this issue under the plain error doctrine is necessary in this case to do substantial justice because the proof of an essential element of the crime is particularly close. The evidence of premeditation, while marginally sufficient, was not overwhelming. While there was proof, from the defendant's statement, that he took time to load and aim his weapon before firing it at the victim, there was no indication that the defendant procured the shotgun for the purpose of confronting the victim. Further, there was no proof of planning activity or any particular motive. In consequence, the prejudicial effect of an improper closing argument would be greater than in a case where there is more than sufficient proof of the defendant's guilt. See, e.g., Judge v. State, 539 S.W.2d 340, 345 (Tenn. Crim. App. 1976) ("While the evidence here preponderates in the State's favor on appeal, this case was a very 'close' one at trial when viewed by the reasonable doubt standard. Therefore, the prejudicial impact of the statement on the jury is likely to have been greater than it would have been had evidence of defendant's guilt been overwhelming.").

Although counsel is generally given wide latitude, courts must restrict any improper argument. Sparks v. State, 563 S.W.2d 564 (Tenn. Crim. App. 1978). Generally speaking, closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). To merit a new trial, however, the argument must be so inflammatory or improper as to affect the verdict. Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758 (1965). In Judge v. State, this court articulated the factors to be considered in making that determination:

> (1) the conduct complained of viewed in the context and the light of the facts and circumstances of the case;
> (2) the curative measures undertaken by the court and the prosecution;
> (3) the intent of the prosecutor in making the improper statements;
> (4) the cumulative effect of the improper conduct and any other errors in the record; and
> (5) the relative strength or weakness of the case.

539 S.W.2d at 344.

Most restrictions during final argument are placed upon the state. That is based in great measure upon the role of the prosecutor in the criminal justice system:

> [The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution

is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor, indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or lesser degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935); see also Judge, 539 S.W.2d at 344-45. Thus, the state must refrain from argument designed to inflame the jury and should restrict its commentary to matters in evidence or issues at trial. The prosecutor must not express a personal belief or opinion, but whether that qualifies as misconduct often depends upon the specific terminology used. For example, argument predicated by the words "I think" or "I submit" does not necessarily indicate an expression of personal opinion. United States v. Stulga, 584 F.2d 142 (6th Cir. 1978). The prosecution is not permitted to reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial. See Dupree v. State, 219 Tenn. 492, 410 S.W.2d 890 (1967); Moore v. State, 159 Tenn. 112, 17 S.W. 30 (1929); Watkins v. State, 140 Tenn. 1, 203 S.W. 344 (1918); McCracken v. State, 489 S.W.2d 48 (Tenn. Crim. App. 1972).

This court has observed that there are five generally recognized areas of prosecutorial misconduct related to closing argument:

1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (citations omitted).

In this instance, the prosecutor, on more than one occasion did, in fact, express a personal opinion as to the veracity of the witnesses:

This whole issue about whether the Ward family had a gun at the creek, they didn't have a gun. She didn't lie about that. Bless her heart, she told the truth.

\*        \*        \*

[Jeff Mathis] is no-count. Don't believe anything that he says unless it is corroborated and supported by the other evidence.

\*        \*        \*

Now, Jeff is no-count. He has a criminal record as long as your arm and has been in jail. You can believe the parts of his testifying that are corroborated by the other evidence.

\*        \*        \*

You can be proud of law enforcement in this case. Everyone has been well-represented in this case. David Hicks and the sheriff's department and all of these people, they put the facts in this case together and did not let any evidence get away from this case. There is not one iota of proof of any negligence on the part of Houston County in this investigation. They did their jobs. They got their man. They brought you the evidence in this case. They are a good crew to work with. You can be proud of your department in law enforcement in this case.

(Emphasis added). The statements made regarding the testimony of Ms. Ward and the investigation conducted in this case amounted to improper vouching. Although the endorsement of the testimony of Jeff Mathis was less than resounding, the prosecutor did personally endorse this corroborated testimony. Expressions of personal opinion by the prosecutor are generally prohibited as a form of unsworn, unchecked testimony which tends to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the advocated cause. See Lackey, 578 S.W.2d at 107. In Thornton, 10 S.W.3d at 235, this court ruled that comments by a prosecutor that he was "very proud" of the crime lab and that "they do an excellent job" was improper argument. While the defense closing argument most certainly called into question the credibility of the state's witnesses, this did not give the prosecutor license to express his personal opinion about Ms. Ward's or Jeff Mathis' veracity or credibility. Similarly, he should not have commented on the effectiveness of the law enforcement investigation of the crime. Although the defendant admitted shooting the victim, the degree of homicide, especially as between first and second degree murder, was a significant issue at trial and the determination depended in large measure on the credibility of Ms. Ward and the investigating officers.

Further, the prosecutor made several statements during closing argument which appear to have been designed to arouse the passions of the jury and to stigmatize defense counsel:

In desperation, the [defense] lawyers suggest that Ms. Ward would tell something other than the truth about the events that caused the death of her husband that night.

It's offensive to suggest that this son that ran for help as his father lay bleeding on the ground, to suggest that he was in some way involved in a conspiracy to kill - - cover up this crime. How dare you?

How dare you suggest that this family was involved in some kind of sham and has lied to this jury? How dare you? It's a shame that that's happened in this trial.

It didn't have to happen.

&ast; &ast; &ast;

What in the world did Selw[y]n Ward do in this case that contributed in any was to his death. The only thing that he did was to sit up in his chair, confront two (2) woolly boogers coming out of the night.

&ast; &ast; &ast;

You know, there's a part of me that wishes he had had a gun that day. That he had a gun and he had picked it up and shot this guy and we wouldn't have to be here today. Because she would have had every - - Under the law, she would have every right - - every legal right to defend her family down there.

&ast; &ast; &ast;

Now it's not okay to use a sawed-off shotgun or carry a sawed-off shotgun. Who carries a sawed-off shotgun under the seat of a car? And why did Marshall Mathis have that with him? What sort of man is he to saw the barrel - - to saw a - - saw a shotgun off? There's only one thing. This is a sawed-off shotgun. There's only one thing in life that a sawed-off shotgun is made for, that's to hurt people.

&ast; &ast; &ast;

In this case, the only interested party in this case is Marshall Mathis, because he is trying to find a way out of this case through his lawyers.

&ast; &ast; &ast;

It is first degree, particularly when you take the other facts of the other witnesses, through the defendant's own statement and his no-count brother, Jeff, who is a thief.

[Jeff Mathis] has been in jail for thievery. [Jeff Mathis] was on parole that night when this happened.

(Emphasis added.)

In my view, these comments qualified as improper argument. Two, three, and possibly four of the prohibited areas were breached by the prosecution. See Goltz, 111 S.W.3d at 6. Moreover, even if the victim had a perfect right to have defended himself under these circumstances, it was undignified and intemperate for the prosecutor to suggest that the defendant should have been shot. Finally, in the final argument by the state, the prosecution speculated upon the content of the instructions which the trial court intended to provide to the jury at the conclusion of the case. In Smith v. State, 626 S.W.2d 283, 285 (Tenn. Crim. App. 1981), this court observed that "[i]t is the province of the trial judge to state to the jury the law of the case, and it is not always advisable to counsel to do so in final argument because of the possibility of error in their summation." While references to the law during argument are fairly common place and while, standing alone, the reference made by the prosecution to the law in this case would not have been a basis for relief, there was an inadvertent misstatement, later repeated by the trial judge (and addressed in the previous section of this opinion), as to the application of the "nature of the conduct" definition of intentional.

In summary, the margin of proof in this case supporting a first degree, rather than a second degree, murder conviction was narrow. The primary source of evidence of premeditation came from

the defendant's own statement to police.[1]  See Judge, 539 S.W.2d at 344 (in determining whether improper argument had an effect on the verdict, an appellate court should consider the relative strength or weakness of the case).  Our supreme court has held that "the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict."  Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979).  Further, that the improper comments were made so often, and in fact comprised the major portion of the state's rebuttal argument, suggests intentional rather than neglectful conduct.  See Judge, 539 S.W.2d at 344.  Of equal importance is that neither the trial court nor the state undertook any measures designed to cure the prejudicial effect of the improper argument.  See id.  Under these circumstances, it is my view that the comments made during the state's closing argument were so improper that they cannot be classified as harmless.  See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

Because the error cannot be classified as harmless and in recognition of the considerable burden on the prosecution to refrain from improper methods of argument, I would classify the error as plain.  See Tenn. R. Crim. P. 52(b); Smith, 24 S.W.3d at 282-83.  That is to say that it strikes at the fairness, integrity, and public reputation of judicial proceedings.  See Wooden, 658 S.W.2d at 559.  Accordingly, I would reverse and grant a new trial.  See Harrington, 385 S.W.2d at 759.

_____
GARY R. WADE, PRESIDING JUDGE

---

[1]Although it has no bearing on my analysis in this case, that the defendant had initially entered into a negotiated plea agreement for second degree murder suggests that both the state and the defense had reservations about the proof of premeditation.