# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 17, 2001 Session

## STATE OF TENNESSEE v. PATRICIA ADKISSON

### Appeal from the Circuit Court for Hickman County
### No. 99-5039CR-I     Donald P. Harris, Judge

---

### Nos. M2000-01079-CCA-R3-CD, M2000-02319-CCA-R3-CD - Filed 10/12/01

---

The defendant, Patricia Adkisson, who was charged with 253 counts of animal cruelty and one count of tampering with evidence, was convicted on three counts of animal cruelty. See Tenn. Code Ann. §§ 39-14-202, 39-16-503. The trial court imposed three consecutive terms of 11 months, 29 days, and granted supervised probation. As a condition of probation, the defendant was prohibited from owning any caged animals for a period of five years. The defendant appealed. Later, the trial court revoked probation and a second appeal followed. In this consolidated proceeding, the defendant claims that (1) the trial court erred by denying her motion to suppress evidence gathered during the initial search of her property; (2) the evidence was insufficient; (3) the sentence was improper; and (4) the trial court lacked authority to revoke her probation. Because the search of the defendant's premises violated constitutional principles, the trial court erred by failing to suppress the evidence which led to the convictions. Accordingly, the convictions are reversed and the causes are remanded.

### Tenn. R. App. P. 3; Judgments of the Trial Court Reversed; Causes Remanded

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

John P. Cauley, Franklin, Tennessee (on appeal), and Douglas T. Bates, III, Centerville, Tennessee (at trial), for the appellant, Patricia Adkisson.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; and Judson Phillips and Kenneth K. Crites, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On December 17, 1998, Kathy Wilkes-Myers and Mary Sexton, the vice-president and president, respectively, of the Hickman County Humane Society, traveled to the residence of the defendant, Patricia Adkisson, to investigate an anonymous complaint regarding the care she provided to her animals. Deputy Richard Warden of the Hickman County Sheriff's Department accompanied Ms. Wilkes-Myers and Ms. Sexton to the site. After viewing the property, Ms. Sexton and Officer Warden left to obtain a search warrant. Although Ms. Wilkes-Myers remained on the property, she did not conduct any further investigation during the absence of Ms. Sexton and the officer. Upon their return and in reliance upon a search warrant, Ms. Sexton photographed the defendant's animals and their living areas. There were one hundred ninety-five animals, consisting mostly of a variety of canine breeds. As a result of the search, nine dogs were removed from the property and taken to a veterinary hospital.

The next morning, Ms. Wilkes-Myers and Ms. Sexton returned to the property, accompanied by a second officer and the defendant's attorney. Upon their arrival, they discovered that a majority of the animals had been moved to another location. Ms. Wilkes-Myers and Ms. Sexton removed those that remained. On advice of counsel, the defendant eventually surrendered a large number of other dogs, which were purportedly those that had been moved during the night. A total of 253 animals were evacuated from the defendant's property.

I

First, the defendant asserts that the trial court erred by denying her motion to suppress the evidence gathered from the initial search of her property. At the hearing on the motion, the defendant contended that the search was illegal because it was conducted without a warrant and without her consent; she also argued, and the state conceded, that the search warrant was inappropriately executed by members of the Humane Society rather than the Hickman County Sheriff or a deputy. See Tenn. R. Crim. P. 41(c). At the conclusion of the hearing, the trial court determined that because the search warrant was improperly executed, all of the evidence collected pursuant thereto would be excluded. The trial court denied the motion, however, as it related to the initial warrantless inspection:

> I don't think that the state has carried[] . . . its burden of proving that there was a willful and knowing consent to search her property given by Ms. Adkisson . . . . [T]hen the issue becomes whether there was sufficient state involvement to result in a suppression of what was seen by Ms. Sexton and Ms. Wilkes-Myers. . . . And I find that there was not.
>
> The officer accompanied these two ladies to Ms. Adkisson's property, but it's clear that he was doing that at their request. His only participation, really, was giving some advice, and even that advice indicates that it was not his action, he told Ms. Adkisson that he believed that these ladies had probable cause to believe that there

was cruelty to animals, and he probably was correct in that. But, still, what he told her indicated that it was their action and not his.

* * *

So I don't think there was sufficient state action . . . until the time of the search warrant, to result in the suppression of any evidence.

The defendant asserts that Ms. Wilkes-Myers and Ms. Sexton were acting "under color of law." She contends that their violation of the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution must be attributed to the state. The state argues that Ms. Wilkes-Myers and Ms. Sexton were not state actors and, in the alternative, that the defendant consented to their inspection of her property. On review, this court must uphold the trial court's findings of fact unless the evidence preponderates otherwise. State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). This court's review of the trial court's application of the law to the facts, however, is de novo. Id.

Initially, the state argues that because the defendant failed to present the issue in a motion for new trial, the ground is waived. The state also asserts that the issue does not rise to the level of plain error. Generally, the failure to present an issue in a motion for new trial results in a waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984).

Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous. Plain error is especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

(a) The record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused [must not have waived] the issue for tactical reasons; and
(e) consideration of the error must be "necessary to do substantial justice."

Id. at 641-42.  Our supreme court characterized the Adkisson test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

Here, the record clearly establishes that the defendant challenged the evidence in the trial court, which determined that neither Article I, Section 7 of the Tennessee Constitution nor the Fourth Amendment to the United States Constitution was applicable to the search.  Because, however, our research suggests that Ms. Wilkes-Myers and Ms. Sexton fit within the definition of "state actor" and, therefore, were subject to constitutional limitations, the trial court's ruling appears to have breached a clear and unequivocal rule of law and adversely affected a substantial right of the defendant.  There is no indication that the defendant waived the issue for tactical reasons.[1]  Finally, it is our view that consideration of the suppression issue is "necessary to do substantial justice."  Because all factors appear to be present, this court chooses to address the question as plain error.

Under Article I, Section 7 of the Tennessee Constitution and the Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, a warrantless search or seizure is presumptively unreasonable and any evidence discovered thereby is subject to suppression unless one of the narrowly defined exceptions applies. U.S. Const. amends. IV, XIV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 450 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996).  There is, however, no constitutional protection against unreasonable searches and seizures by private individuals. Burdeau v. McDowell, 256 U.S. 465 (1921).  It is only when an individual acts as an agent of the state that a constitutional violation may be utilized to preclude the admission of evidence. Coolidge, 403 U.S. at 487.

In State v. Burroughs, our supreme court, citing United States v. Walther, 652 F.2d 789 (9th Cir. 1981), recognized two factors as relevant to the determination of whether private conduct is chargeable to the state in connection with an allegedly unreasonable search:  (1) whether the government has knowledge of and acquiesces in the search; and (2) the intent of the party performing the search.  926 S.W.2d 243, 246 (Tenn. 1996).  Describing this two-pronged analysis as the "legitimate independent motivation" test, our supreme court in Burroughs determined that a private individual who had conducted a warrantless search of a dormitory room was not a state agent.  In several of the federal cases cited with approval in Burroughs, it was held that so long as the private party acts for a reason independent of the purpose of the state, there is no state agency and, in consequence, no protection against unreasonable searches and seizures.

By the application of the Burroughs test to these circumstances, it is our view that the conduct of Ms. Wilkes-Myers and Ms. Sexton in their initial search of the property is chargeable to the state.  In our view, Officer Warden of the Hickman County Sheriff's Department, who clearly had

---

[1]Although the ground was not included in a motion for new trial, no motion for new trial was filed.  In fact, the record also demonstrates that the defendant did not file a timely notice of appeal.  Counsel on appeal, who was not involved in the trial, sought and received a waiver of the requirement.  In granting the request, this court found that the appeal should be granted in the interest of justice.  See Tenn. R. App. P. 4(a).

knowledge of the initial search, acquiesced in its execution by accompanying the two women to the property and lending the credibility and authority of law enforcement to the Humane Society. The state argues that the deputy was present in this instance merely to provide protection to Ms. Wilkes-Myers and Ms. Sexton. At the suppression hearing, Ms. Wilkes-Myers testified that Hickman County Humane Society representatives "always call a deputy sheriff to accompany [them] because a lot of times . . . isolated locations [are involved] and [they] just do that for [their] protection." The record reflects, however, that the deputy's involvement extended beyond providing security to Ms. Wilkes-Myers and Ms. Sexton. Officer Warden testified that he attempted to calm the defendant after Ms. Sexton advised her of the nature of the investigation. He then informed the defendant that, in his opinion, a dead puppy they had observed near their vehicles supplied the necessary probable cause for the issuance of a search warrant. When the defendant indicated that she would allow an inspection of her property so long as photographs were not made, the officer called for back-up assistance at the scene. After inspecting the property, Officer Warden assisted Ms. Sexton, as she obtained a search warrant, by signing an affidavit in support of its issuance. During this process, Ms. Wilkes-Myers was left alone with the defendant and, by all appearances, she did not require any protection from law enforcement.

Application of the second factor yields the same result. It is our view that Ms. Wilkes-Myers and Ms. Sexton were performing a law enforcement function at the time of their initial search. In the words of Ms. Sexton, she and Ms. Wilkes-Myers, as representatives of the Hickman County Humane Society, "were there due to an anonymous complaint of animals being in poor conditions and deplorable housing and filth and . . . to substantiate that complaint." Ms. Wilkes-Myers testified that the Humane Society "go[es] by the State of Tennessee cruelty laws, that's what [the organization tries] to enforce." Humane societies which are chartered by the state, such as the Hickman County Humane Society, are specifically vested with the power to arrest and prosecute animal cruelty offenders:

>   The agents of any society which is incorporated for the prevention of cruelty to animals, upon being appointed thereto by the president of such society in any county, may, within such county, make arrests, and bring before any court thereof offenders found violating the provisions of this part with regard to non-livestock animals.

Tenn. Code Ann. § 39-14-210(a) (emphasis added). "While county humane societies may engage in certain activities that are not governmental in nature, the above statute[] demonstrate[s] that the primary purpose of such organizations is law enforcement . . . ." Studer v. Seneca County Humane Society, No. 13-99-59, 2000 WL 566738, at *3 (Ohio Ct. App. May 4, 2000) (holding that humane society was political subdivision of Ohio for purposes of immunity statutes); see also Putnam County Humane Society v. Woodward, 740 So.2d 1238, 1240 (Fla. Dist. Ct. App. 1999) (holding that Public Records Act was applicable to humane society because "[w]here the [s]ociety ha[d] used its statutory authority to investigate acts of animal abuse and . . . to seize animals, it ha[d] acted as an agent of the state"). Here, there is no indication that either Ms. Wilkes-Myers or Ms. Sexton had a legitimate

motivation to search the property independent of her affiliation with the Hickman County Humane Society.

Having determined that Ms. Wilkes-Myers and Ms. Sexton qualified as state actors in conducting the search, it is also our conclusion that the initial search of the property was unreasonable. As the trial court also recognized, the state has failed to carry the burden of establishing, by a preponderance of the evidence, that the search fell within one of the recognized exceptions to the warrant requirement. See Coolidge, 403 U.S. at 454-55. Moreover, the trial court, having seen and heard the testimony of the witnesses and having reviewed the evidence firsthand, determined that the defendant did not consent to the search. This court is obliged to uphold the trial court's findings of fact unless the evidence preponderates otherwise. Keith, 978 S.W.2d at 864; State v. McCrary, 45 S.W.3d 36, 41 (Tenn. Crim. App. 2000). It does not do so in this case. Because the initial search was unreasonable and the defendant did not consent thereto, the evidence which led to each of the convictions must be suppressed.

II

Next, the defendant argues that the evidence, even if it had been properly admitted, was insufficient to support her convictions. She contends that there is no evidence of the appropriate standard of care and no proof that any deviation from that standard caused or contributed to the conditions of the animals for which the state obtained convictions.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Animal cruelty is committed when a person intentionally or knowingly

(1) [t]ortures, maims or grossly overworks an animal;
(2) [f]ails unreasonably to provide necessary food, water, care or shelter for an animal in the person's custody;
(3) [a]bandons unreasonably an animal in the person's custody;

(4) [t]ransports or confines an animal in a cruel manner; or

(5) [i]nflicts burns, cuts, lacerations, or other injuries or pain, by any method, including blistering compounds, to the legs or hooves of horses in order to make them sore for any purpose including, but not limited to, competition in horse shows and similar events.

Tenn. Code Ann. § 39-14-202(a).

Here, the jury convicted the defendant on counts 4, 11, and 26 of the indictment. Counts four and 26 charged the defendant with cruelty by unreasonable failure "to provide necessary food, water, care or shelter" to a female Chihuahua and a female Maltese, respectively. At trial, Cindy Wasden, a Hickman County Human Society member, testified that she took possession of the Chihuahua on December 21. When she removed the animal from the two-by-four-foot cage in which it was being transported with 14 to 16 other dogs, she discovered that its back legs were paralyzed. She noted that the dog was thin and covered with sores. It was euthanized at a veterinarian's recommendation. With regard to the Maltese, Ms. Wasden testified that the dog was thin, toothless, covered in mud and feces, and had an obvious cough. The Maltese was also euthanized. The defendant does not deny that the dogs were in her custody and care. On these facts, a jury could have properly found that the defendant failed to provide the necessary care for the Chihuahua. Even though the defendant was not shown to have caused the dog's paralysis, the dog had a number of untreated open sores on its body. A jury could also have properly found that the Maltese, which was living in its own excrement and obviously ill, was not provided proper care or shelter.

Count 11 of the indictment charged the defendant with animal cruelty by the "torture and maim[ing]" of a female toy fox terrier. Ms. Wasden testified that when she removed the terrier from its cage, she observed that it was unable to stand. One of the dog's front legs was twisted and its back leg was mangled and bleeding. Additionally, there was blood and pus coming from the animal's rectum. Ultimately, the terrier was also euthanized. For purposes of animal offenses, "torture" is defined as "every act, omission, or neglect whereby unreasonable physical pain, suffering, or death is caused or permitted." Tenn. Code Ann. § 39-14-201(4). While there was no evidence of what caused the terrier's injuries, it was within the jury's province to infer from the circumstances that the defendant's neglect of those injuries resulted in unreasonable pain and suffering to the terrier. In summary, had there been a valid search, the evidence would have been sufficient to support each of the three convictions.

III

The defendant next asserts that the trial court erred by imposing the maximum term for each conviction, ordering consecutive sentences, and prohibiting her from owning caged animals for five years.

In misdemeanor sentencing, trial courts are required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). The sentence must be specific and consistent with the purposes of the Criminal

Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-302(a). Not greater than 75 percent of the sentence should be fixed for service by a misdemeanor offender; however, a DUI offender may be required to serve the full one hundred percent of his sentence. Tenn. Code Ann. § 40-35-302(d); Palmer v. State, 902 S.W.2d 391, 393-94 (Tenn. 1995). In determining the percentage of the sentence to be served, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d).

Upon service of the required percentage of the sentence, the administrative agency governing the rehabilitative program determines which among the lawful programs available is appropriate. Id. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Appellate review of misdemeanor sentencing is de novo with a presumption of correctness. See State v. Troutman, 979 S.W.2d 271 (Tenn. 1998).

Here, the trial court observed that the "sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4). In an effort to protect any animals in the defendant's custody, the trial court ruled as follows:

> I do think that she is guilty of animal cruelty in these counts. . . . I also think that she at least knowingly treated the animals cruelly in that she knew that she wasn't able to take care of them and kept having puppies and it got out of hand. But she knew that and, of course, knowingly is part of this criminal statute. And she was making a living at that, so I think consecutive sentencing is appropriate. I will sentence her to eleven months and twenty-nine days in the Hickman County Workhouse in each case and fine her in the amount of one thousand dollars. Those sentences to run consecutively one with another.
>
> I will suspend the sentences and place her on eleven months and twenty-nine days probation in each case and order that as a condition of probation . . . for a period of five years that she have no dogs or any animals that are ordinarily kept in cages unless she gives a written consent to the Hickman County Humane Society to search her premises outside the actual residence where she lives at any time, and then she allows them to do it.

Animal cruelty, a Class A misdemeanor, is punishable by "not greater than eleven (11) months twenty-nine days or a fine not to exceed two thousand five hundred dollars ($2,500), or both." Tenn. Code Ann. §§ 39-14-202(f); 40-35-112(e)(1). Upon conviction, the defense agreed to proceed to sentencing without a presentence report or a separate sentencing hearing. When invited

to be heard on the issue, defense counsel stated that "everything that [he] would tell the [c]ourt came out on direct examination." In this appeal, the defendant does not argue the application of any particular mitigating factors. Rather, she argues that "[i]mposition of the most sever[e] sentence . . . is simply not justified in this case." As indicated, however, there is no presumptive minimum in misdemeanor sentencing. Moreover, it is our view that the sentences of 11 months, 29 days, would have been warranted by the circumstances of the offenses. The evidence, photographs and otherwise, established that the defendant, a commercial dog breeder, maintained over 250 animals in poor conditions. By all appearances, their level of care was pitiful. After the Hickman County Humane Society discovered the improprieties, the defendant hid the majority of the dogs. Even though there were only three convictions, the state clearly established severe neglect. See State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000) (holding that sentencing court may consider facts underlying an offense for which the defendant has been acquitted where the facts have been established by a preponderance of the evidence). That the trial court suspended all three of the defendant's sentences and ordered total probation exhibited leniency. Had the convictions been upheld, it would be our determination that the lengths of the sentences were warranted.

The defendant also questions the propriety of consecutive sentencing. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Id. at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[2] exist:

> (1) The defendant is a professional criminal who has knowingly devoted [himself] to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to

---

[2] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

      (4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

      (5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

      (6)  The defendant is sentenced for an offense committed while on probation;

      (7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

Here, the trial court ordered consecutive sentencing because the defendant "was making a living" as a commercial breeder notwithstanding her failure to properly care for the large number of animals in her possession. As such, the trial court apparently relied upon Tennessee Code Annotated section 40-35-115(b)(1), that the defendant is a professional criminal who has knowingly devoted her life to criminal acts as a major source of livelihood. In our view, however, that factor is inapplicable. Although the defendant committed criminal acts in connection with her livelihood, breeding and selling dogs, the business, properly operated, is not inherently criminal. There are no other applicable criteria that would support consecutive sentencing.

Finally, the defendant complains that the trial court erred by prohibiting her from keeping caged animals for a period of five years. Such a requirement would have been an appropriate condition for the full term of the defendant's probation. See Tenn. Code Ann. § 40-35-303(d)(9). Trial courts, however, may only suspend a sentence "for a period of time . . . up to and including the statutory maximum time for the class of the conviction offense." Tenn. Code Ann. § 40-35-303(c). The state concedes error by the trial court in extending the term to five years. This court must agree. No conditions of probation, such as the prohibition against dog ownership, could have extended beyond the term of the sentence.

IV

As her final issue, the defendant argues that the trial court erred by revoking her probation because her sentence was automatically stayed pending the outcome of her appeal. See State v. Lyons, 29 S.W.3d 48 (Tenn. Crim. App. 2000). Citing State v. Conner, 919 S.W.2d 48 (Tenn. Crim.

-10-

App. 1995), the state responds that a trial court always retains jurisdiction over a probationer, even when the sentence is not in effect.

The jurisdiction of this court "attaches upon the filing of the notice of appeal and, therefore, the trial court loses jurisdiction." State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996); see also State v. Peak, 823 S.W.2d 228, 229 (Tenn. Crim. App. 1991). Although the defendant filed her notice of appeal nearly two months late, this court granted the defendant's motion to waive timely filing on May 24, 2000, concluding that the notice was considered timely filed as of May 8. At that time, almost two months before the filing of the probation revocation warrant on July 8, 2000, the trial court lost jurisdiction.

In our view, State v. Conner is distinguishable from this case. In Conner, the defendant pled guilty to driving under the influence, fourth offense, and driving on a revoked license. He received an effective sentence of 11 months, 29 days, with all but 150 days suspended. The sentence was ordered to be served consecutively to a prior felony sentence. Later, the district attorney general filed a petition to revoke probation, asserting that the defendant had failed to return from a furlough and had also received another driving under the influence conviction. The defendant argued, among other things, that the trial court was without authority to revoke his probation because his sentence had not actually commenced. This court disagreed, holding that a trial court may revoke a term of probation based on acts committed after sentencing, but before the commencement of a probationary term. Id. at 51. There is one critical procedural difference between Conner and this case: At the time of the revocation petition in Conner, no notice of appeal had been filed and the judgment had become final. Here, of course, a notice of appeal had been filed and the trial court's jurisdiction had ended prior to the July 8 probation revocation warrant.

Our conclusion does not turn on the fact that the sentence of the defendant was stayed pending her appeal. Rather, it is a matter of jurisdiction. The state argues that such a holding will give probationers "*carte blanche* to violate the law during a period when the sentence is not in effect." The hands of a trial court, however, are not tied under these circumstances. Under Tennessee Code Annotated section 40-35-311(a) and the rule in Conner, a trial court could appropriately consider a probation revocation warrant based on a criminal offense committed during appeal after completion of the appeal and return of jurisdiction to the trial court.

Because the evidence resulting from the initial search of the defendant's property should have been suppressed, the convictions are reversed and the cause remanded to the trial court.

_____
GARY R. WADE, PRESIDING JUDGE