IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2008

**STATE OF TENNESSEE v. WILLIAM KEITH PAULSON, ALIAS**

**Direct Appeal from the Criminal Court for Knox County**
**No. 78033     Richard R. Baumgartner, Judge**

_____

**No. E2007-02621-CCA-R3-CD - Filed September 24, 2009**

_____

The defendant, William Keith Paulson, was convicted by a Knox County jury of reckless endangerment, a Class E felony; two counts of felony evading arrest, Class D felonies; evading arrest, a Class A misdemeanor; driving without a license, a Class C misdemeanor; and violation of the state registration law, a Class C misdemeanor. Subsequently, he was sentenced to an effective eighteen-year sentence, as a career offender, in the Department of Correction. On appeal, he raises the single issue of whether double jeopardy principles require the merger of his convictions for reckless endangerment, felony evading arrest, and evading arrest into a single conviction for felony evading arrest. Following review of the record, we conclude that the two counts for felony evading arrest should have been merged into a single count as they were simply alternative charges for the same conduct. Further, we determine that the misdemeanor evading arrest should have also been merged with the felony evading arrest as it represented a single course of conduct. However, merger of the single remaining felony evading arrest and the reckless endangerment convictions is not required. As such, the case is remanded for entry of corrected judgments of conviction in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J.C. MCLIN, JJ., joined.

J. Liddell Kirk (on appeal), and Patrick Looper and Anastacia Shelton (at trial), Knoxville, Tennessee, for the appellant, William Keith Paulson, Alias.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Philip H. Morton and Ta Kisha M. Fitzgerald, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## Factual Background

The defendant's convictions in this case arose from his actions of leading police on an approximate fifteen-mile chase on Knoxville roadways. On the evening of March 5, 2003, Knoxville police officer John Kiely and his partner encountered the defendant, who was standing outside his vehicle which was stopped in a lane of traffic. They approached the defendant and inquired if he was having trouble with his vehicle. The defendant informed the officers that he was having problems with his car but that he was going to get the vehicle to a safe place and then return home. After checking the defendant's information and running his criminal history, the officers left the defendant with his vehicle, issuing no citations. According to Officer Kiely, both he and his partner were polite and courteous to the defendant, and the defendant caused them no problems.

Around 1:30 a.m. on the following morning, Officer Jeff Day was on routine patrol, spotted the defendant's vehicle, and noticed that the defendant's license plate was not illuminated, which is a violation of a local ordinance. Officer Day initiated a traffic stop, and the defendant pulled his car to the side of the road. Officer Day approached the defendant's car, explaining why he had stopped him, and asked to see the defendant's driver's license. The defendant then informed him that he had been stopped earlier by Knoxville police officers and that they had failed to return his license to him. At this point, Officer Day had the defendant move his car into a K-mart parking lot for safety reasons. Officer Day contacted Officer Kiely by radio, and Kiely agreed to come to the scene. While waiting, Officer Day returned to his patrol car, and the defendant remained in his own vehicle.

When Officer Kiely and his partner, Officer Coker, arrived at the K-mart parking lot, Kiely approached Officer Day, and Coker approached the defendant's car. While Officer Kiely was informing Officer Day that they did not have the defendant's driver's license, he heard Officer Coker say, "Hey guys. Look at this . . . what's this guy doing?" When Offer Kiely turned, he observed the defendant start his car, make an U-turn, and pull out of the parking lot. Officer Coker shouted for the defendant to stop.

Officers Kiely and Coker returned to their patrol car, activated the blue lights and sirens, and followed the defendant northbound on Broadway. Officer Day also followed the defendant. The defendant was not speeding, traveling only approximately forty miles per hour, but he did run two red lights. Officer Keily, concerned about the rain-slick road conditions, remained approximately one hundred and fifty yards behind the defendant. Nonetheless, he and Officer Day continued to pursue the defendant with both their blue lights and their sirens activated. There was other traffic on the roadway, although it was not heavily congested.

Based upon information received via radio communication, a Tennessee Highway Patrol officer had parked his patrol unit across the roadway, with his blue lights flashing, in order to assist in stopping the defendant. The defendant proceeded to drive toward the car, nearly hit the car, swerved abruptly to the left, and continued toward Clinton Highway. The Tennessee Highway Patrol

officer then stated over the radio, "He almost hit me head-on. I'm going to take over the pursuit." He also requested back up from a second highway patrol officer.

Also in the area at the time were Knox County Sheriff's deputies, including Sergeant Donny Weaver, who initially advised his officers to stay out of the pursuit. Weaver, along with Officers Keily and Day, observed the second highway patrol officer approach the scene, lose control of his vehicle, and hit a telephone pole. All three officers stopped to assist the highway patrol officer. The defendant was observed pulling into a shopping center parking lot and coming to a stop in front of the first highway patrol officer who continued to pursue him. As the officer began to exit his car, the defendant proceeded to pull out "at a high rate of speed coming back toward the intersection where the traffic accident was," traveling against the flow of traffic. The highway patrol officer again resumed his chase, and the defendant pulled into a Goody's parking lot, driving directly toward a white pickup truck. Although the truck did not stop, it appeared that the defendant's vehicle made contact with the "pickup truck's rear bumper." At this point, Sergeant Weaver, who had activated his blue lights and joined in the pursuit, saw the defendant proceed across the parking lot and stop near an embankment. The highway patrol officer again pulled directly behind the defendant and exited his vehicle. The defendant then sped forward across the "embankment and a ditch, [and came] across the top of it, back out into the northbound lane of traffic," but traveling southbound. Sergeant Weaver pursued the defendant and decided to end the pursuit quickly by necessary means as the defendant was endangering both citizens and the other officers. Sergeant Weaver struck the defendant's vehicle in the right rear in order to attempt to force him off the road. The defendant still refused to stop.

At this point, Sergeant Weaver radioed Deputy Ricker, who was in the area, to enter the pursuit. The two officers attempted to "box-in" the defendant, and Deputy Ricker then bumped the side of the defendant's vehicle. The defendant accelerated, which caused his vehicle to roll onto the median and land upside down. Deputy Ricker's car also crashed, causing injuries including a ruptured spleen. After the crash, the defendant proceeded to climb out of the window of his vehicle and flee on foot. Sergeant Weaver and a highway patrol officer pursued and apprehended the defendant.

Based upon the above conduct, the defendant was indicted by a Knox Country grand jury for reckless endangerment, two counts of felony evading arrest, misdemeanor evading arrest, violation of the driver's license law, violation of the state registration law, and failure to provide evidence of financial responsibility. A jury trial was later commenced. The defendant testified in his own defense at trial and acknowledged that he had, in fact, fled from the officers while being pursued. He disputed none of the factual circumstances of the actual pursuit. However, he testified that the initial encounter with Officers Keily and Coker was somewhat hostile. He further stated that when Officer Coker arrived at the K-mart parking lot during the second stop, he ordered the defendant to get out of the car. The defendant testified that he refused because he "didn't think it was right the way he was talking to me." He went on to testify that he had prior bad experiences with law enforcement officers and "chose that time" to leave.

After hearing the evidence presented, the jury convicted the defendant as charged, with the exception of the charge for failure to provide proof of financial responsibility. After a subsequent sentencing hearing, the defendant was sentenced, as a career offender, as follows: six years for the reckless endangerment, twelve years for each count of felony evading arrest, eleven months and twenty-nine days for the misdemeanor evading arrest, and thirty days for both the violation of the driver's license law and the violation of the state registration law. The court ordered all counts to be served concurrently, with the exception of the reckless endangerment conviction, resulting in an effective sentence of eighteen years in the Department of Correction.

The defendant subsequently filed a *pro se* "motion for a delayed appeal," which the trial court treated as a timely filed motion for new trial. Following the appointment of new counsel, amended motions were filed, and a hearing was held. The trial court, by written order, denied the motion for new trial. The defendant timely appealed that denial.

**Analysis**

On appeal, the defendant raises the single issue of whether double jeopardy principles were violated by the trial court's failure to merge his convictions for reckless endangerment, two counts of felony evading arrest, and misdemeanor arrest. According to the petitioner, these four convictions should have been merged "into a single felony conviction for evading arrest in a vehicle." As an initial matter, the State argues that the defendant has waived the issue based upon his failure to include the issue in his motion for new trial. The defendant acknowledges that he failed to object at trial or raise the issue in his motion for new trial.

The State is correct that, generally, the failure to present an issue in a motion for new trial results in waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that, for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error . . . committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). While acknowledging his failure to previously raise the issue, the defendant contends that waiver is not appropriate as the provisions of Rule 3(e) "do not apply if the issue that a defendant failed to raise in a motion for new trial would result in the dismissal of the prosecution against the accused if found meritorious." Relying upon *State v. Keel*, 882 S.W.3d 410, 416 (Tenn. Crim. App. 1994), he asserts that waiver is inapplicable here because he is not asking for a new trial but for dismissal of convictions which violate double jeopardy principles. However, the defendant's argument is misplaced. Even if meritorious, his argument does not result in dismissal of the prosecution as he acknowledges that one conviction will still remain. Thus, the prosecution is not dismissed.

However, this court may review possible error, whether properly assigned or not, under the doctrine of plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal

Procedure. *State v. Ogle*, 666 S.W.2d 58 (Tenn. 1984). Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770 (1993). Plain error is not merely error that is conspicuous, but is especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. *State v. Wooden*, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

(a) The record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused [must not have waived] the issue for tactical reasons; and
(e) consideration of the error must be "necessary to do substantial justice."

*Id*. at 641-42. Our supreme court characterized the *Adkisson* test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). Based upon our review, we conclude that the five factors have been established and that review is necessary pursuant to plain error.

Both our federal and state constitutions prohibit persons from being "twice put in jeopardy" for the same offense. U.S. CONST. amend. V; Tenn. Const. art. I, § 10. "This prohibition against double jeopardy provides protection from three evils: (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense." *State v. Franklin*, 130 S.W.3d 789, 797 (Tenn. Crim. App. 2003) (citing *Lewis*, 958 S.W.2d 736 at 738). Proof that the offenses have the same exact statutory elements is not required to establish that offenses are the "same" for double jeopardy purposes. *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996). The issue before us relates to the last of the three categories as the defendant contends that the four convictions resulted from the same continuous act, *i.e.*, the continuous police pursuit.

In *State v. Denton*, our supreme court recognized that "[t]he key issue in multiple punishment cases is legislative intent." *Id*. at 379. In other words, the court must determine whether the legislature intended that each violation resulting from a single act be a separate offense. Presumptively, "the legislature does not ordinarily intend to punish the same offense under two different statutes." *Id*. In *Denton,* the court set out a four-part balancing inquiry which is to be utilized in determining whether a defendant has received multiple punishments for the same act in violation of the principles of double jeopardy. *Id*. at 379-81; *see also State v. Goodwin*, 143 S.W.3d 771, 781 (Tenn. 2004). First, the reviewing court must determine whether each offense requires proof of an element that the other does not, in accordance with *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932). *Denton*, 938 S.W.2d at 379. Second, the court must look to the

specific evidence offered in the case to determine whether different evidence was used to prove each separate offense. *Id*. at 380. Next, the court is to consider whether there were multiple victims or multiple episodes. *Id*. at 381. Finally, the court must examine the purposes of the respective statutes prohibiting the defendant's conduct and determine whether the statutes serve different purposes. *Id*. at 381. No one factor in this test is determinative; rather, the court must balance all factors in relation to each other. *Id*. Moreover, our supreme court further noted that, while appellate review must be guided by the test announced in *Blockburger*, that test is not conclusive of legislative intent and the reviewing court must also examine: (1) whether there were multiple victims involved; (2) whether several discrete acts were involved; and (3) whether the evil at which each offense is directed is the same or different. *Id*. at 378-79.

## I. Two Counts of Felony Evading Arrest

Class D felony arrest is defined by our criminal code as follows:

It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, *to intentionally flee or attempt to elude* any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.

T.C.A. § 39-16-603(b)(1) (2006) (emphasis added). The statute further provides that, in order to be classified as Class D felony arrest, it must create a risk of death or injury to innocent bystanders or other third parties. *Id*. at (b)(3). Counts two and three of the indictment returned against the defendant charged felony evading arrest, count two by "intentionally fleeing" and count three by "attempting to elude." Thus, we agree with the defendant that these were alternative charges for the same offense. The State, at trial, even noted to the trial court that these counts reflected alternative ways of charging the same offense. It is well settled that merger is appropriate in order to protect against double jeopardy when a jury convicts a defendant under alternate theories of the same offense. *State v. Hurley*, 876 S.W.2d 57, 70 (Tenn. 1993); *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997). The record establishes only one felony evading arrest in this case. As such, the two convictions for felony evading arrest should be merged into a single conviction.

## II. Felony Evading Arrest/Misdemeanor Evading Arrest

Next, the defendant contends that his conviction for misdemeanor evading arrest should have also been merged with the felony evading arrest as it was part of the same continuing criminal episode, asserting that there "was one single pursuit from the time officers began pursuing [the] defendant . . . until [the] defendant was in custody." The State counters, although acknowledging that the convictions both arise from a single course of conduct, that the facts of the case support dual punishment for two separate criminal offenses. The State contends that the defendant committed two distinct offenses by first fleeing from officers in a motor vehicle on the streets, creating a risk of death or serious injury to innocent bystanders, and then fleeing from the officers on foot.

As noted, we must begin with a *Blockburger* analysis of the element of the two offenses. Tennessee Code Annotated section 39-16-603(a)(1) provides that "it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person: (A) knows the officer is attempting to arrest the person; or (B) has been arrested." Violation of subsection (a) is a Class A misdemeanor. T.C.A. § 39-13-603(a)(3). As previously noted, subsection (b) states that "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop . . . [and] the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties. . . ." T.C.A. § 39-16-603(b)(1), (3). With the inclusion of the risk of death or injury to bystanders, violation of subsection (b) is a Class D felony.

Comparison of the two offenses reveals that they pass *Blockburger* scrutiny. Subsection (a) requires that the accused know that the police officer is attempting to arrest the person, but subsection (b) requires only a signal to stop and not an arrest or attempted arrest. In addition, subsection (b) addresses a specific method of evading arrest, that is by use of a motor vehicle and that the flight or attempt to elude creates a risk of death or injury to innocent parties. *See State v. Gregory Mullins*, No. E2004-02314-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Aug. 25, 2005); *State v. Prentice C. Calloway*, No. M2004-01118-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 2, 2005). Thus, different statutory elements are present.

Next, we note that both of the charged offenses were established, to some extent, by the same course of conduct, that is the defendant's flight from police officers. However, proof that the defendant fled in a motor vehicle after having received a signal to stop and that innocent bystanders were at risk of death or injury was required to establish felony evading arrest. To establish misdemeanor evading arrest, proof was only required that the defendant fled, by any means of locomotion, knowing that officers were attempting to arrest him. The State introduced evidence of each of these elements. Thus, we conclude that each offense did require different proof.

Third, we must analyze whether the two offenses involve multiple victims or multiple episodes. As pointed out by the State, misdemeanor evading arrest does not contemplate victims per se, while Class D felony arrest does require that innocent bystanders or third parties be placed at risk. The State further asserts two distinct acts of flight during the incident, that being the chase in the car and the defendant's subsequent flight on foot after his car was wrecked. While making this argument, the State acknowledges that panels of this court have previously reached different conclusions but urges us to conclude that this case is factually distinguishable. *See Gregory Mullins*, No. E2004-02314-CCA-R3-CD; *State v. Prentice C. Calloway*, No. M2004-01118-CCA-R3-CD. However, we find no such factual distinction present in this case and conclude that the proof presented at trial with regard to both offenses established one continuous criminal episode rather than two discrete acts supporting multiple convictions.

Likewise, we disagree with the State's assertion that the respective legislative purposes of the two crimes address different concerns. As noted in *Prentice C. Calloway*,

[the] evil at which the statute is directed is the same whether one flees on foot or motor vehicle, that is, to discourage flight from a police officer performing his or her official duties. The fact that the punishment is enhanced if the suspect flees in a motor vehicle rather than by some other means of locomotion does not alter the general evil the statute seeks to prevent.

*State v. Prentice C. Calloway*, No. M2004-01118-CCA-R3-CD.

Based upon the above analysis and the facts presented, we conclude that the defendant's convictions for misdemeanor evading arrest and Class D felony evading arrest violate the constitutional prohibitions against double jeopardy. Accordingly, merger of the misdemeanor into the felony is necessary.

### III. Felony Evading Arrest/Reckless Endangerment

Finally, the defendant contends that these two convictions also violate principles of double jeopardy and should be merged because they "are basically the same thing." He contends that the State relied upon the same proof, namely his operation of his car, to establish the deadly weapon element of reckless endangerment and to increase the evading arrest to a felony, that the class of potential people at risk was the "practically the same" and that the risk or danger created by the defendant was established by the same conduct. He asserts that there is "not likely to be a Class D felony evading that [is  not] also reckless and [does not] place another person at serious risk with a motor vehicle."

We agree with the State, and the defendant acknowledges, that each offense requires proof of elements that the other does not. Class E felony reckless endangerment is "reckless engag[ing] in conduct which places or may place another person in imminent danger of death or serious bodily injury . . . committed with a deadly weapon." T.C.A. § 39-13-103(a), (b) (2006). Again, Class D felony evading arrest is committed while "operating a motor vehicle on any street, road, alley or highway in this State, . . . [and] intentionally flee[ing] or attempt[ing] to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop . . . [and] the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties." T.C.A. § 39-16-603(b)(1), (3). Thus, reckless endangerment requires use of any deadly weapon, while felony evading arrest requires operation of a motor vehicle. *See State v. Johnny C. Menifee*, No. M2005-00708-CCA-R3-CD (Tenn. Crim. App. at Nashville, July 31, 2006). Moreover, evading arrest requires a flight or an attempt to elude a law enforcement officer following a signal to stop. *Id*. Thus, we agree that the offenses pass *Blockburger* scrutiny as there is not an identity of elements.

Next, we must examine the specific evidence offered by the State to determine whether different proof was used to establish each offense. With regard to felony evading arrest, the proof established that the defendant fled from multiple police officers, leading them on a long chase in his car on rain slick roads, running multiple traffic lights and driving into oncoming lanes of traffic at

a high rate of speed. Proof was presented that the defendant's acts caused risk to other drivers on the roadway and, specifically, to the driver of a white pickup truck. With regard to the felony reckless endangerment, proof was presented that the defendant, while operating his vehicle on a roadway in Tennessee, drove that vehicle straight toward a highway patrol officer parked in the roadway in an attempt to stop the defendant. The proof further established that the defendant nearly hit the officer's car head-on. Thus, separate proof was presented that, within the single course of conduct, the defendant committed separate and distinct acts which established both offenses, which were separated by time, location, and *actus reas*. *See State v. Johnny C. Menifee*, No. M2005-00708-CCA-R3-CD. Again, we do not dispute that the defendant's acts were all committed within a single criminal episode; however, this is not the determinative test for double jeopardy. *See id*. Moreover, based upon the foregoing, it is also clear that there were multiple victims and distinct episodes of conduct constituting separate offenses. Two specific victims were specifically established.

Finally, with regard to the purpose of the two statutes, this court has previously concluded that they are not the same. *Id*. Evading arrest legislatively addresses the threatened harm "to . . . the public interest of obstructing a law enforcement officer in the discharge of any legal duty," and the aggravated form of this offense "addresses the public harm when the act of evading arrest creates a risk of death or injury to innocent bystanders or other third parties." *Id*. (citations omitted). On the other hand, the crime of reckless endangerment "addresses threatened harm 'to the individual' by prohibiting conduct which may place another person in danger of death or serious bodily injury with a deadly weapon." *Id*. (citations omitted). Thus, the respective harms underlying the two crimes are distinguishable in purpose.

Based upon our above consideration, we conclude that double jeopardy does not bar dual convictions for Class D felony evading arrest and Class E felony reckless endangerment upon the facts of this case. Thus, merger is not required.

**CONCLUSION**

Based upon the foregoing, the case is remanded to the trial court for entry of corrected judgments in accordance with this opinion.

_____
JOHN EVERETT WILLIAMS, JUDGE