IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2010

**DIMECOS ICHAD JONES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 04-03180     John P. Colton, Judge**

_____

**No. W2009-02425-CCA-R3-PC  - Filed March 9, 2011**
_____

The Petitioner, Dimecos Ichad Jones, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief, alleging that his trial and appellate counsel were ineffective. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Dimecos Ichad Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Michael Zak, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On direct appeal, the Petitioner challenged the sufficiency of the convicting evidence and the trial court's failure to provide a jury instruction on defense of another person; this court affirmed the trial court's ruling and the Petitioner's convictions. State v. Dimecos Jones, No. W2006-00237-CCA-R3-CD, 2007 WL 1946654 (Tenn. Crim. App. 2007), perm. app. denied (Tenn. Nov. 19, 2007). Although the facts of the Petitioner's case have already been discussed in this court's opinion affirming the Petitioner's convictions on direct appeal, we will provide the following factual summary to establish context for the Petitioner's issues before this court. See id.

This case arose from the Petitioner's involvement in a dispute over drug territory in Memphis, Tennessee. Christen Williams sold drugs at the Corner Apartments, and she was threatened by the victim, a member of the Gangster Disciples, because she was selling drugs in what the victim considered to be his territory. Ms. Williams asked Mario Green, the Petitioner's cousin and roommate, to help her settle the dispute. Mr. Green, who was also a member of the Gangster Disciples, gave the Petitioner a weapon and asked the Petitioner to come with them as they attempted to resolve the dispute. Mr. Green instructed Ms. Williams to wait at the back of the apartment complex while he and the Petitioner confronted the victim.

The Petitioner and Mr. Green approached the victim, who was in his car with Marcus Tubbs. After some conversation, the Petitioner, while holding a 9 mm pistol, told the victim to get out of the car and lie down on the ground; the victim complied. Mr. Green, who was also armed with a handgun, instructed Mr. Tubbs to get out of the car and stand near the passenger's side of the car, and Mr. Tubbs complied. While the victim was on the ground, the Petitioner removed the victim's shoes and searched his pockets. After searching the victim's pockets, the Petitioner met with Mr. Green at the front of the car. According to Mr. Tubbs, the Petitioner asked, "Should I do him? Should I do him?" while talking to Mr. Green. Although Mr. Tubbs did not hear Mr. Green's response, he saw the Petitioner walk over to the victim and shoot him in the back of the head.

In the Petitioner's statement to police, the Petitioner admitted that he shot the victim but stated that when he asked Mr. Green for instructions, Mr. Green handed him a .357 revolver and whispered, "Kill him." The autopsy report indicated that the victim was killed with a .357 revolver and that the victim also suffered "a second area of trauma to his skull," which occurred "prior to the gunshot wound."

After his convictions were affirmed on appeal, the Petitioner filed a timely petition for post-conviction relief on June 24, 2008, in which he alleged that trial and appellate counsel were ineffective. The post-conviction court appointed counsel, who did not file an amended petition for post-conviction relief.

The post-conviction evidentiary hearing was held on three separate days over the course of three months. On the first day, June 11, 2009, the Petitioner testified that trial counsel was appointed to represent him. He admitted that trial counsel filed a motion to suppress and other "basic motions" on his behalf. The Petitioner stated that he met with trial counsel on five occasions and that they discussed trial strategy on only one occasion. He stated that trial counsel sought to challenge the element of premeditation for the first degree murder charge by attempting to prove that the Petitioner was incapable of forming the requisite mental state. Trial counsel sought to have the Petitioner evaluated by a mental

health professional to lend support to this trial strategy. The trial court granted trial counsel's motion for funds to hire the expert; however, the trial court denied the motion to continue the case in order to schedule the evaluation. The Petitioner stated that they discussed hiring a mental health professional approximately 30 days before trial but that trial counsel filed the motion to hire the professional "late." The Petitioner stated that trial counsel also asked for a continuance in order to hire a forensic pathologist to combat the State's expert; however, this motion was also denied. The Petitioner stated that trial counsel told him that he did not know that the State was going to use an expert at trial; therefore, he did not seek to hire his own expert until right before trial. The Petitioner admitted that at trial, trial counsel's objections to the State's peremptory challenges of black jurors were overruled by the trial court.

The Petitioner stated that appellate counsel only raised two issues, the jury instructions and the sufficiency of the evidence, on appeal. He stated that appellate counsel did not raise the jury selection issue, the suppression issue, or the trial court's denial of counsel's motions for a continuance on appeal. He also stated that in relation to the sufficiency of the evidence, counsel did not argue on appeal that the Petitioner was unable to form the requisite mental state in order to sustain a conviction of premeditated murder. He further stated that counsel did not confer with him about the issues that were going to be raised on appeal.

On cross-examination, the Petitioner admitted that counsel challenged the State's improper exercise of peremptory challenges and that the trial court denied counsel's objection. He insisted that he was pressured into shooting the victim and that he was unable to form the requisite intent to sustain a conviction of premeditated murder.

On the second day of the hearing, July 8, 2009, trial counsel testified that he had been practicing criminal law for 12 years and that he had participated in 60 or 70 jury trials. He stated that in his representation of the Petitioner, he reviewed the discovery materials with the Petitioner, visited the crime scene, talked with witnesses, and discussed the State's proof with the Petitioner. He stated that they also developed and discussed a theory of defense "with what little bit we had in the case." Trial counsel stated that the Petitioner had admitted that he shot the victim; therefore, they attempted to prove that the Petitioner was coerced and under duress when he committed the crime. He said that they tried to convince the jury that the Petitioner "would [have] been the one on the ground with the bullet in his head" if the Petitioner had refused to shoot the victim because a Gangster Disciple "overseer" had instructed the Petitioner to kill the victim. He admitted that duress was not an available defense for murder, but he stated that the excuse of duress was all they had to support a theory of self-defense. While he had discussed this theory with the Petitioner and based his trial strategy on the Petitioner's statements to him, the Petitioner's testimony at trial belied their theory of defense. When trial counsel asked the Petitioner if "he was scared or felt like

-3-

he had to protect himself or anything like that from the overseer," the Petitioner simply said, "[A] little bit." Trial counsel said that "[y]ou could almost watch the shades go down . . . in the [jurors'] eyes as soon as that testimony came out." He stated that he believed that "the testimony from the [Petitioner] is what killed [the defense]."

On cross-examination, trial counsel again stated that the Petitioner's testimony was inconsistent with "what he had told me in the jail." Trial counsel stated that he filed a motion to continue the case when he realized that the State was going to call an expert to testify. He also stated that he sought to have Dr. Marsha Little-Hendren examine the Petitioner right before trial because "at the last moment some things were said to [him] that made [him] think maybe [he] should" have the Petitioner examined. He stated that a prior examination of the Petitioner did not reveal any problems; therefore, he did not attempt to have any further examinations performed at that time. He stated that the trial court granted his motion for funds to hire Dr. Little-Hendren, but the Petitioner was never examined because they "couldn't get it done in time." He stated that appellate counsel also helped at trial but that appellate counsel was the only person who formally represented the Petitioner on appeal. He stated that appellate counsel "made most of the decisions with me as to what was going to be in the appeal," but he did not "remember now what decisions were made or why [they] made them."

On the third day of the hearing, August 13, 2009, the Petitioner testified that trial counsel sought to have Dr. Little-Hendren examine him to rebut the State's proof of premeditation. He stated that trial counsel told him that they needed an expert to examine the effect that ecstasy, marijuana, and liquor would have had on his mind at the time of the crime. He stated that he asked post-conviction counsel to request the post-conviction court to summon Dr. Little-Hendren to the post-conviction hearing.

At the conclusion of the Petitioner's testimony on that day, post-conviction counsel requested permission to "prepare an ex parte order so [Dr. Little-Hendren] can get paid to do the evaluation based upon the fact that she was appointed before." Post-conviction counsel admitted that Dr. Little-Hendren had never actually examined the Petitioner and stated that he actually just wanted Dr. Little-Hendren to "make a proffer of proof [as to] what she might have testified to" at trial. Following argument by defense counsel and the State, the post-conviction court stated that he did not "see at this point where it would be proper to bring in Dr. Little-Hendren or any other expert if it's not been done already."

In a written order, filed on October 30, 2009, the post-conviction court denied the petition for post-conviction relief. The post-conviction court's findings on each issue will be discussed as they arise in this opinion.

-4-

ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegation to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his grounds by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether trial counsel's performance was deficient, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). An attorney's performance must be measured against the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

In determining whether appellate counsel's failure to raise an issue on appeal constitutes ineffective assistance of counsel, our supreme court has held that "unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." Carpenter v. State, 126 S.W.3d 879, 887-88 (Tenn. 2004) (citing United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993)). "Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel" as these are "tactical and strategic choices," which should not be second-guessed. Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

## I. Inadequate Preparation and Jury Sequestration

The Petitioner contends, in the post-conviction petition, that trial counsel failed to interview and cross-examine the State's witnesses, failed to "file any meaningful pretrial motions," failed to timely request funds to obtain an expert psychiatrist and forensic pathologist, and failed to object to the trial court's decision to allow the jurors to return home following jury selection. The State responds that the Petitioner failed to present evidence to support his arguments; therefore, the Petitioner failed to prove his factual allegations by clear and convincing evidence. The State also responds that because the Petitioner failed to make the trial transcript an exhibit at the post-conviction hearing, the Petitioner's contention that trial counsel failed to file motions cannot be reviewed.

While this court may take judicial notice of an earlier direct appeal record when reviewing the post-conviction court's denial of a petition, State ex rel. Wilkerson v. Bomar, 376 S.W.2d 451, 453 (Tenn. 1964), we conclude that this issue is waived. Although the State responded as if these issues were properly before this court, the Petitioner's brief does not discuss these issues. Indeed, Rule 10(b) of the Rules of the Court of Criminal Appeals of Tennessee provides, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."

Moreover, the Petitioner failed to provide any evidence at the post-conviction hearing in support of his assertions. The Petitioner and trial counsel were the only witnesses who testified at the hearing. The Petitioner did not present testimony from the witnesses that he alleged should have been cross-examined, and the Petitioner did not present testimony from the psychiatrist or forensic pathologist that trial counsel sought to obtain. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or

present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Additionally, the record reflects that the psychiatrist that trial counsel sought to obtain never actually examined the Petitioner. In order to prove prejudice on this issue, the Petitioner should have been examined prior to the hearing. See Black, 794 S.W.2d at 757. Relative to the jury sequestration issue, the Petitioner did not present any evidence that the jurors were improperly influenced or that he was prejudiced by the trial court's decision to allow the jurors to go home. Accordingly, we also conclude that the Petitioner has failed to prove these allegations by clear and convincing evidence.

## II. Motion for Continuance

The Petitioner contends that trial counsel failed to file a timely motion for a continuance when he was permitted to hire an expert psychiatrist to examine the Petitioner and testify relative to the Petitioner's state of mind and that appellate counsel was ineffective for failing to preserve the trial court's denial of the continuance as an issue on appeal. The Petitioner asserts that the trial court granted trial counsel's request to hire the psychiatrist on October 14, 2005 but that trial counsel did not file a motion for a continuance until October 27, 2005. The State responds that trial counsel was not responsible for the trial court's denial of the motion to continue and that the record supports the post-conviction court's finding that the trial court did not abuse its discretion by not granting the motion for continuance.

The direct appeal record reflects that trial counsel filed a motion for a continuance on October 27, 2005, three days before trial. In the motion, counsel stated that while the trial court granted the ex parte motion for appointment of Dr. Little-Hendren on October 14, 2005, he did not receive the "physical copy of said approved order until October 24, 2005" and that Dr. Little-Hendren was not able to complete her examination prior to trial.

Relative to the Petitioner's contention that trial counsel failed to file a timely motion for a continuance to have the Petitioner examined by the psychiatrist, the post-conviction court found that "[t]rial [c]ounsel's performance regarding the [m]otion for [c]ontinuance was well within the range of competence demanded of attorneys in criminal matters." The post-conviction court erroneously treated this issue as if the Petitioner were alleging that trial counsel was responsible for the trial court's denial of the motion. While this could be an interpretation of the Petitioner's claim on appeal, a close reading of the petition reveals that the Petitioner was asserting that trial counsel failed to file a timely motion and that appellate counsel failed to raise the trial court's denial of the motion on appeal.

As to the Petitioner's contention that trial counsel failed to file a timely motion, we do not agree with the post-conviction court that trial counsel's delay was reasonable given the circumstances of the case. The motion was granted on October 14, 2005, but trial counsel failed to take any action on the grant of the motion until October 27, 2005. Trial counsel had ample time to contact the expert and file a motion for a continuance before the start of the trial. Instead, counsel waited until three days before trial to request a continuance. While trial counsel's delay was unreasonable, the Petitioner cannot establish prejudice because he failed to establish what the examination would have revealed. See id.

Relative to the Petitioner's claim that the trial court abused its discretion in denying counsel's motion to continue and that appellate counsel was ineffective for failing to include this issue on appeal, we acknowledge that the Tennessee Supreme Court has held that "[t]he trial court's denial of a continuance will be reversed only if it appears that the trial court abused its discretion to the prejudice of the defendant." State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004) (citing State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995)). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied [the] defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." Hines, 919 S.W.2d at 579 (citing State v. Wooden, 658 S.W.2d 553, 558 (Tenn. Crim. App. 1983)). Again, without evidence of what the examination would have revealed, the Petitioner cannot establish that a different result would have followed. See Black, 794 S.W.2d at 757. Likewise, we are also unable to determine whether appellate counsel was ineffective for failing to raise this issue on appeal. Id. Accordingly, we conclude that the Petitioner has failed to prove his allegations by clear and convincing evidence.

III. Batson Challenges

The Petitioner contends that the State utilized peremptory challenges to exclude African-American jurors from the jury and that once the trial court recognized a pattern of discrimination, the court "should have declared a mistrial and require[d] an entirely new jury panel to be seated for the jury selection process." See Batson v. Kentucky, 476 U.S. 79 (1986). The Petitioner further contends that appellate counsel was ineffective for failing to raise this issue on appeal. The State responds that this issue should be waived because the Petitioner did not include the transcript of the jury selection in the record on appeal. The State further responds that appellate counsel's decision to exclude the issue on appeal was a strategic decision and that the Petitioner has not presented any evidence that he suffered any prejudice as a result of this decision. The State asserts that the Petitioner did not call appellate counsel as a witness at trial and that the Petitioner failed to prove his allegation by

clear and convincing evidence. To prevail on this issue, the Petitioner must establish that the trial court abused its discretion in denying counsel's objections to the State's peremptory challenges and that appellate counsel erroneously failed to pursue this issue on appeal.

A review of the direct appeal record reflects that citing Batson, trial counsel objected to the State's use of peremptory challenges on two separate occasions. On each occasion, the State provided a race-neutral reason for excluding the jurors. Following the race-neutral explanation, the trial court accepted the challenges and denied trial counsel's objection. While the trial court acknowledged that there was a pattern of discrimination in that several black jurors were excluded, the trial court found that the State provided an adequate, race-neutral reason for the exclusion of the jurors.

While this issue was not included in trial counsel's initial motion for new trial, it was included in the amended motion for new trial. However, the issue was not raised on appeal. In denying relief on this issue, the post-conviction court found that the Petitioner did not "present any evidence to show that he ha[d] suffered prejudice" from appellate counsel's failure to raise the issue on appeal. The post-conviction court further found that had appellate counsel raised the issue on appeal, the Petitioner "would likely not have been afforded any relief."

In Batson, the Supreme Court held that the State's exclusion of potential jurors solely based upon race violates the Equal Protection Clause of the Fourteenth Amendment. Batson, 476 U.S. at 89. There are three prerequisites that must be met in order to establish a Batson violation: (1) the Defendant must establish a prima facie case of purposeful discrimination; (2) the State must be given the opportunity to rebut the prima facie case by offering a race-neutral explanation for the exercise of the peremptory challenge; and (3) the trial court must then determine whether the Defendant has established purposeful discrimination. Id. at 96-98.

Although the State's race-neutral explanation must be reasonable and specific, there is no requirement that it be persuasive. Purkett v. Elem, 514 U.S. 765, 767-68 (1995); see also State v. Hugueley, 185 S.W.3d 356, 368 (Tenn. 2006). Essentially, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." Elem, 514 U.S. at 768; see also Hugueley, 185 S.W.3d at 368. However, the trial court must consider the explanation in light of all of the evidence to insure that the explanation is not pretextual. Miller-El v. Dretke, 545 U.S. 231, 251-52 (2005); Hugueley, 185 S.W.3d at 369. The trial court is in the position to judge the credibility of

both the potential jurors and counsel because the trial court has the opportunity to observe their demeanor.  State v. Smith, 893 S.W.2d 908, 914 (Tenn.1994).  Therefore, "[o]n appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous."  Snyder v. Louisiana, 552 U.S. 472, 477 (2008); see also Hugueley, 185 S.W.3d at 359.

Despite a clear pattern of discrimination, the State was able to offer a race-neutral explanation for the exclusion of the challenged jurors, which is all that is required under Batson.  The record supports the trial court's decision to accept the State's race-neutral explanation for excluding the jurors.  Accordingly, we conclude that the record supports the post-conviction court's finding that the Petitioner failed to establish that he suffered any prejudice as a result of appellate counsel's failure to raise this issue on appeal.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE